07/20/01

THIS DISPOSITION
IS CITABLE AS PRECEDENT
OF THE T.T.A.B.

Paper No. 12

# UNITED STATES PATENT AND TRADEMARK OFFICE

————

## Trademark Trial and Appeal Board

————

In re A La Vieille Russie, Inc.

————

Serial No. 75/609,153

————

William S. Frommer and Marilyn Matthes Brogan of Frommer Lawrence & Haug LLP for A La Vieille Russie, Inc.

Gina M. Fink, Trademark Examining Attorney, Law Office 103 (Daniel P. Vanovese, Acting Managing Attorney)

————

Before Bottorff, Holtzman and Drost, Administrative Trademark Judges.

Opinion by Bottorff, Administrative Trademark Judge:

Applicant seeks registration on the Principal Register pursuant to Trademark Act Section 2(f), 15 U.S.C. §1052(f), or, alternatively, on the Supplemental Register, of the mark RUSSIANART, in typed form, for services recited in the application as "dealership services in the field of fine art, antiques, furniture and jewelry."[1]

---

[1] Serial No. 75/609,153, filed December 21, 1998. The application is based on use in commerce, with use of the mark alleged since June 5, 1941. Applicant filed its provisional amendment to the Supplemental Register on June 13, 2000.

The Trademark Examining Attorney has refused registration on the Principal Register, finding that applicant's mark is merely descriptive of the recited services under Trademark Act Section 2(e)(1), 15 U.S.C. §1052(e)(1), and rejecting applicant's Section 2(f) claim of acquired distinctiveness. The Trademark Examining Attorney also has refused registration on the Supplemental Register, on the ground that applicant's mark is generic for the recited services and thus is incapable of distinguishing applicant's services. See Trademark Act Section 23, 15 U.S.C. §1091. Finally, the Trademark Examining Attorney has refused registration on the basis that applicant's specimens are unacceptable as evidence of service mark use of the mark sought to be registered.

Applicant has appealed each of the Trademark Examining Attorney's refusals. Applicant and the Trademark Examining Attorney filed main appeal briefs, and applicant filed a reply brief. No oral hearing was requested. After careful consideration of the arguments and evidence presented, and for the reasons discussed below, we affirm the refusals to register.

Applicant's Section 2(f) claim of acquired distinctiveness, which applicant made in the original application, is a concession that the mark is not inherently distinctive and that it therefore is not registrable on the Principal Register absent a sufficient showing of acquired distinctiveness. *See Yamaha International Corp. v. Hoshino Gakki Co. Ltd.,* 840 F.2d 1572, 6 USPQ2d 1001 (Fed. Cir. 1988); *In re Cabot Corp.,* 15 USPQ2d 1224 (TTAB 1990); *see also* TMEP §1212.02(b). Thus, although both applicant and the Trademark Examining Attorney have presented

arguments on the issue, mere descriptiveness is not an issue in this appeal.[2]

Rather, in this appeal we must decide: (a) whether applicant's mark is generic and thus unregistrable on either the Principal Register or the Supplemental Register; and (b) if the mark is deemed to be not generic but rather only merely

---

[2] Applicant's Section 2(f) claim in the application was not made provisionally or in the alternative. Therefore, under the authorities cited above, applicant has conceded that its mark is merely descriptive and is not entitled to argue, as it does in its briefs, that the mark is inherently distinctive. In any event, applicant's arguments in support of its inherent distinctiveness claim are unpersuasive. The numerous unpublished Board decisions cited by applicant are not precedential authority in this proceeding, nor are they particularly on point. Applicant's primary argument appears to be that applicant seeks registration of the "unitary" term RUSSIANART, and that although "Russian art" might be merely descriptive of a feature or characteristic of applicant's art dealership services, which applicant admits include dealership in Russian art, RUSSIANART is not merely descriptive. However, we find that the compound term RUSSIANART is as merely descriptive as its constituent words, "Russian art." *See In re Abcor Development Corporation*, 588 F.2d 811, 200 USPQ 215 (CCPA 1978) (GASBADGE merely descriptive of "device to determine and monitor personal exposure to gaseous pollutants"); and *In re Orleans Wines, Ltd.*, 196 USPQ 516 (TTAB 1977) (BREADSPRED merely descriptive of jellies and jams).

descriptive, then is applicant's showing of acquired distinctiveness sufficient to allow for registration of the mark on the Principal Register pursuant to Trademark Act Section 2(f), or is the mark instead registrable only on the Supplemental Register.

We shall address the genericness issue first. "A generic term is the common descriptive name of a class of goods or services…" *H. Marvin Ginn Corp. v. International Association of Fire Chiefs, Inc.,* 782 F.2d 987, 228 USPQ 528, 530 (Fed. Cir. 1986).

```
The critical issue in genericness cases is
whether members of the relevant public
primarily use or understand the term sought to
be protected to refer to the genus of goods or
services in question.  Determining whether a
mark is generic therefore involves a two-step
inquiry: First, what is the genus of goods or
services at issue? Second, is the term sought
to be registered or retained on the register
understood by the relevant public primarily to
refer to that genus of goods or services?
```

*Id.* (Citations omitted.)

Thus, our first task under *Marvin Ginn* is to determine, based on the evidence of record, what is the genus of services in which the specific services rendered by applicant are properly classified.

In its application, applicant has identified its services as "dealership services in the field of fine art, antiques, furniture and jewelry." Based on the evidence of record, however, we find that this recitation of services is

insufficiently definite to serve as the name of the genus of applicant's services, for purposes of our genericness analysis in this case. The evidence shows that "Russian art" is a distinct genre or type of art for which there is a defined commercial market, and that applicant, and others, are known and referred to generically as dealers in Russian art. Therefore, we find that the genus of services involved in this case is "art dealership services in the field of Russian art," rather than merely "art dealership services" or, as applicant has argued, merely "dealership services."[3]

The evidence of record includes a printout of applicant's website,[4] made of record by the Trademark Examining Attorney, in which applicant identifies "Russian Works of Art" as one of the categories of products it deals in. The website also reprints an article from ANTIQUE International concerning

---

[3] We note that "genus" is defined as "a class, kind, or group marked by common characteristics or by one common characteristic; *specif*: a category of biological classification ranking between the family and the species…" Webster's Ninth New Collegiate Dictionary (1990) at 513. In a normal taxonomic system comprised of, from most inclusive to least inclusive, the categories of kingdom, phylum, class, order, family, genus and species, and in which, for our purposes, the kingdoms would be "goods" and "services," applicant's suggested category of "dealership services" would properly be placed at a much higher and more inclusive level than "genus." "Dealership services" necessarily would include services, such as "automobile dealership services," which are not in applicant's field and which have little or nothing in common with applicant's services. Likewise, given the evidence of record which shows that there is a distinct commercial market for Russian art, and that there are art dealers who specialize in that field, "art dealership services" is too broad and inclusive to properly be deemed a "genus" within the kingdom of "services." *Cf. Marvin Ginn, supra,* in which the court found the applicable genus of goods to be not merely "magazines," but rather the defendant's particular "class of magazines," i.e., "magazines directed to the field of firefighting."

applicant, in which applicant's business is referred to as "a gallery renowned for its exquisite jewellery and Russian works of art," and which refers generally to "the market for Russian art" (i.e., "There have been changes in the market for Russian art, thanks to the opening up of the former Soviet Union…").  The ANTIQUE International article appears to be based on an interview with one of applicant's principals, Peter Schaffer, who states therein: "We are very pleased with the recommendations we get from **other dealers around town and around the world in Russian art.**"  (Emphasis added).

In addition, the Trademark Examining Attorney has made of record excerpts of articles obtained from the NEXIS database which identify "Russian art" as a commercially

---

4[4] The URL is http://www.alavieillerussie.com/sschaffer.html, which was accessed and printed by the Trademark Examining Attorney on February 3, 2000.

distinct type or genre of art, and which refer to applicant

and to others as dealers therein (emphasis added):

> "Peter Schaffer, one of the owners of A La Vieille Russie, **Russian art dealers** in New York, said he had seen only one other such skeleton chair, at the Hermitage's Ethnographic Museum in St. Petersburg."  (<u>The New York Times</u>, January 19, 1992);

> "… said Mr. Schaffer, **the dealer in Russian art** and objects.  … Mr. Schaffer, **the dealer in Russian art**, agreed.  'The armory is like no other place in the world,' he said."  (<u>The New York Times</u>, March 6, 1998);

> "'After 1988, for about three years, anything that came from over there you could sell,' said Elena Kornetchuk, a Pennsylvania gallery owner who has been **dealing in Russian art** for more than 20 years. (<u>The Florida Times Union</u>, October 22, 1998);

> "Lucy Maxym, noted author and **Russian art dealer**, will be the featured speaker at a Fine Arts Club program Tuesday at the Arkansas Arts Center.  Maxym has made her name by her involvement with Russian lacquer miniature painting.  In her 75 trips to Russia, Maxym has established personal contact with the artists who create fantastic lacquer boxes…"  (<u>Arkansas Democrat-Gazette</u>, May 20, 1994);

> "Washington art dealer Alla Rogers, who specializes in Eastern European and **Russian art**…"  (<u>The Washington Times</u>, December 15, 1994);

> "… grand opening of its **Russian Art Room** on Thursday night, featuring **Russian art** from the '50s and '60s. …  The two purchased the collection from a **Russian art dealer**."  (<u>The Arizona Republic</u>, October 24, 1993); and

> "That's what **Russian art dealers** say about Russian artist Phelix Scherman, whose work can be seen at Bell Gallery through May 17." (The Commercial Appeal (Memphis), May 1, 1993);

"Vladimer's Studio and Collection … showcases **traditional Russian art** and jewelry originals."  (Press Journal (Vero Beach, FL), November 13, 1998);

"The Russian Place … is a quaint shop with other **Russian art**, including icons…" (Chicago Daily Herald, September 11, 1997);

"As one of the original merchants in Trump Tower, he opened … The Rose Tree, which focused on **Russian art.**"  (The Orlando Sentinel, September 24, 1998);

"There's also the Pushkin Museum of Fine Art, which houses Rembrandts and Botticellis, and the State Tretyakov Gallery, which houses the largest collection of **Russian art.**"  (Incentive, June 1998);

"Fearing more fakes, the Gelos auction house and several top private galleries in Moscow are working hard to establish foolproof ways of authenticating the pieces of art they sell.  British art historian Polly Gray, **an expert in Russian art** from Oxford University, says that many private dealers now ask experts from the top state-run museums, such as the Tretyakov Gallery, to examine and vouch for paintings before they go on sale to private buyers." (Los Angeles Times, February 9, 1998);

"But referring to LeMond's twelve-thousand–square-foot manse as a house is as much a misnomer as calling his frenetic lifestyle 'retirement.'  Filled with expensive antiques and **Russian art**, it is also home to countless glittering awards…"  (MPLS-St.Paul Magazine April, 1998);

"WEISMAN SHOW FEATURES COLD WAR-ERA ART - … still not well known here.  Even Weisman director Lyndel King, who has organized other **Russian art shows**, said she had never heard of Sots art when the show was first proposed by guest curator Regina Khidekel.  'It's not well known in this country at all,' King said.  'A few dealers have it and some private collectors.  There's a collection of non-official **Russian art** at Rutgers University and some in galleries in New York and elsewhere."  (Star Tribune (Minneapolis, MN), January 16, 1999); and

"'Our evolution was cut short in 1917, so now people are trying to continue what should be continued,' says Aidan Salakhova, a Moscow fine art dealer who can hardly satisfy the appetite for 18th

and 19th century **Russian art** to grace the new mansions." (<u>Denver Rocky Mountain News</u>, December 23, 1994).

Based on this evidence, we find that there is a distinct commercial market for "Russian art," and that applicant, and others, are dealers therein. A buyer wishing to invest in or collect Russian art need not go to just any art dealer; rather, such a buyer could go to a dealer specializing in Russian art, such as applicant. Thus, the genus of services involved in this case is "art dealership services in the field of Russian art."

Having identified the genus of services involved herein as "art dealership services in the field of Russian art," we next must determine whether the term applicant seeks to register, i.e., RUSSIANART, is understood by the relevant public primarily to refer to that genus of services. *Marvin Ginn, supra.* In making that determination in this case, two principles apply.

First, where the mark sought to be registered is a compound term "formed by the union of words," the term may be found generic if the evidence of record shows that "the public understands the individual terms to be generic for a genus of goods or services, and the joining of the individual terms into one compound word lends 'no additional meaning to the term.'" *In re Dial-A-Mattress Operating Corp.,* 240 F.3d 1341, 57 USPQ2d 1807, 1810 (Fed.

Cir. 2001), *quoting from In re American Fertility Society,*

188 F.3d 1341, 51 USPQ2d 1832, 1837 (Fed. Cir. 1999).

> In other words, if the compound word would plainly have no
> different meaning from its constituent words, and dictionaries, or
> other evidentiary sources, establish the meaning of those words to be
> generic, then the compound word too has been proved generic.  No
> additional proof of the genericness of the compound word is
> required.

*In re American Fertility Society, supra,* 51 USPQ2d at 1836.

*See also In re Gould Paper Corp.,* 834 F.2d 1017, 1018, 5

USPQ2d 1110 (Fed. Cir. 1987)(SCREENWIPE, a compound term

composed of generic words SCREEN and WIPE, itself is

generic for "pre-moistened, anti-static cloth for cleaning

computer and television screens").

Applying this first principle to the facts of the present case, we find that

RUSSIANART, the term applicant seeks to register, is a "compound term[]

formed by the union of words," i.e., by the union of the words RUSSIAN and

ART.  We further find that the compound term RUSSIANART "would plainly

have no different meaning from its constituent words," RUSSIAN and ART.

That is, the words "Russian art" are not lent any additional meaning simply by

virtue of their having been combined into the compound term RUSSIANART.

Applicant has suggested no such other or additional meaning that results from

the compression of the two words into one, and we are aware of none.

Therefore, pursuant to the authorities discussed above, if the evidence of record

establishes that "Russian art," as applied to applicant's services, is generic under *Marvin Ginn's* two-step inquiry, then the evidence also suffices to establish the genericness of the compound term RUSSIANART.

The second principle applicable to our genericness determination in this case is that a term which is generic for a particular class of goods is also deemed to be generic for the services of selling those goods. *See, e.g., In re Log Cabin Homes Ltd.*, 52 USPQ2d 1206 (TTAB 1999)(LOG CABIN HOMES generic for "architectural design of buildings, especially houses, for others," and "retail outlets featuring kits for constructing buildings, especially houses"); *In re Bonni Keller Collections Ltd.*, 6 USPQ2d 1224 (TTAB 1987)(LA LINGERIE generic for "retail store services in the field of clothing"); *In re Wickerware, Inc.,* 227 USPQ 970 (TTAB 1985)(WICKERWARE generic for "mail order and distributorship services in the field of products made of wicker"); and *In re Half Price Books, Records, Magazines, Incorporated*, 225 USPQ 219 (TTAB 1984)(HALF PRICE BOOKS RECORDS MAGAZINES generic for "retail book and record store services"). *Cf. In re Northland Aluminum Products,* 777 F.2d 1556, 227 USPQ 961 (Fed. Cir. 1985)(BUNDT generic for a "ring cake mix" despite fact that evidence showed generic use of term only for a type of cake, and not for a cake <u>mix</u>).

Applying this second principle to the facts of this case, we find that RUSSIANART (the compound term formed from the words RUSSIAN and ART; *see In re Gould Paper, supra*) is generic as applied to applicant's services. The evidence of record, discussed above, clearly shows that "Russian art" is a generic

name for a certain type of art which is sold by applicant and by other art dealers. Therefore, pursuant to the authorities cited above, "Russian art," or the legally equivalent compound term RUSSIANART, also is generic for applicant's services of selling such art.

Thus, based on the evidence of record, and for the reasons discussed above, we find that RUSSIANART is generic for applicant's recited services, and that it is incapable of distinguishing applicant's services from the similar services of others. The designation therefore is not registrable on either the Principal Register or the Supplemental Register. *See* Trademark Act Sections 2(e)(1) and 23, 15 U.S.C. §§1052(e)(1) and 1091.

Because we have found applicant's RUSSIANART designation to be generic as applied to the services recited in the application, applicant's claim that the designation is registrable on the Principal Register pursuant to Section 2(f) is unavailing. That is, because the designation is generic and incapable of functioning as a service mark, no amount of evidence of acquired distinctiveness would be sufficient to warrant its registration as a mark. *See, e.g., H. Marvin Ginn Corp., supra*, 782 F.2d at 989, 228 USPQ at 530. In the interest of completeness, however, we will decide whether applicant's evidence of acquired distinctiveness would be sufficient, if applicant's designation were to be determined not to be generic, to warrant registration of the designation under Section 2(f).

Even if RUSSIANART were not deemed to be generic for applicant's services, we find that the evidence of record, discussed above, establishes that

the term is very highly descriptive of those services.  Accordingly, a relatively greater quantum and quality of evidence of acquired distinctiveness is required in order to support a finding that the term is registrable under Section 2(f).  *See Yamaha International v. Hoshino Gakki*, supra, 6 USPQ2d at 1008.  Applicant's evidence of acquired distinctiveness in this case falls far short.

Applicant's acquired distinctiveness claim is based on its alleged substantially exclusive and continuous use of the term RUSSIANART in commerce for at least the five years preceding the filing date of the application; earlier in the application, applicant alleges use of the term in commerce since 1941.  However, there is no evidence in the record from which we can ascertain the manner or extent of applicant's use of RUSSIANART.  The only evidence in the record demonstrating the manner of applicant's use of the designation is the specimen brochure (which bears a 1996 copyright notice) submitted with the application.  As discussed more fully below in connection with the Trademark Examining Attorney's specimen refusal, applicant's use of RUSSIANART on these specimens is inconspicuous and merely informational.  RUSSIANART does not appear at all on applicant's website, at least not on the portions which have been made of record.  On both the specimens and the website, applicant uses other designations in the manner of marks both repeatedly and prominently, i.e., its A LA VIEILLE RUSSIE name, and the initials derived therefrom, ALVR, in conjunction with a logo.

We find that the evidence of record concerning applicant's use of the designation RUSSIANART is insufficient to establish that this term, which is at the very least highly descriptive, has acquired distinctiveness. Thus, and assuming *arguendo* that the term is not generic but rather is merely descriptive, we reject applicant's claim of entitlement to registration on the Principal Register under Section 2(f).

We turn finally to the Trademark Examining Attorney's specimen refusal. Applicant's specimen is a brochure, the two inside pages of which feature photographs of gemstones and jewelry and two columns of text containing general information about gemstones and jewelry, along with an invitation to visit applicant's store in New York City. Centered at the bottom of the second column of text on the right-hand inside page of the brochure appears the following:

### A LA VIEILLE RUSSIE
(AH LAH VEE-AYE ROOSE)
781 Fifth Avenue, New York, NY 10022
(212)752-1727  Russianart℠  ALVR1@AOL.COM

The Examining Attorney contends that the matter sought to be registered, i.e., RUSSIANART, as it is displayed on this specimen, would not be perceived as a mark but solely as informational matter describing the goods in which applicant deals.

We agree. On these specimens, RUSSIANART is not displayed in the manner of a mark, but rather appears amid and as part of other informational matter, i.e., applicant's trade name, street address, phone number, and e-mail address. Applicant's name appears in bold and somewhat larger type, but the other matter, including the "Russianart" designation, appear in the same size and font of type as the rest of the brochure text. Applicant's use of the "SM" symbol is not dispositive, nor does it suffice in this case to transform applicant's use of RUSSIANART, buried as it is amid other informational matter, into service mark use. *See generally In re B.C. Switzer & Co.*, 211 USPQ 644 (TTAB 1981); and TMEP §1301.02. Accordingly, we affirm the Trademark Examining Attorney's requirement for substitute specimens and her refusal to register on the ground that the specimens submitted by applicant do not evidence use of the matter sought to be registered as a service mark. *See* Trademark Act Sections 1, 2, 3 and 45, 15 U.S.C. §§1051, 1052, 1053 and 1127; and TMEP §§905.12 and 1301.04.

**Decision**: The refusals to register the mark on the Principal Register and on the Supplemental Register are affirmed.

*****