## In re The AMERICAN FERTILITY SO-CIETY (now known as American Society for Reproductive Medicine)

### No. 98–1540.

United States Court of Appeals,
Federal Circuit.

Aug. 19, 1999.

---

Mark S. Sommers, Finnegan, Henderson, Farabow, Garrett & Dunner, L.L.P., Washington, DC, argued, for the appellant. With him on the brief was Douglas A. Rettew.

Joseph G. Piccolo, Associate Solicitor, Office of the Solicitor, U.S. Patent and Trademark Office, Arlington, Virginia, argued, for the appellee. With him on the brief were Albin F. Drost, Acting Solicitor, and Michael J. Donnelly, Associate Solicitor. Of counsel was Nancy C. Slutter, Associate Solicitor.

Before MICHEL and GAJARSA, Circuit Judges, and CUDAHY, Senior Circuit Judge.*

---

* Honorable Richard D. Cudahy, Senior Circuit Judge, United States Court of Appeals for the Seventh Circuit, sitting by designation.

1. This application was an "Intent to Use" application. We presume that before filing its

MICHEL, Circuit Judge.

The American Fertility Society, now known as the American Society for Reproductive Medicine ("Society"), appeals the May 18, 1998, decision of the Trademark Trial and Appeal Board ("Board") upholding the United States Patent and Trademark Office's ("PTO's") requirement that the Society disclaim the phrase SOCIETY FOR REPRODUCTIVE MEDICINE in order to register its mark, AMERICAN SOCIETY FOR REPRODUCTIVE MEDICINE, on the supplemental register. *See In re The Am. Fertility Soc'y*, No. 74/568,765 (TTAB May 18, 1998). The appeal was submitted for our decision following oral argument on June 8, 1999. We vacate the Board's ruling that the PTO met its burden of proving that the phrase SOCIETY FOR REPRODUCTIVE MEDICINE was generic as based on the application of an incorrect legal test that assumed the genericness of a phrase as a whole based solely on proof of the genericness of its individual terms. We remand for a decision of the Board under the correct legal test as detailed below.

## BACKGROUND

The Society is an association whose primary purpose is to advance the interests of the reproductive medicine field by providing what it describes as "association services," apparently similar to those of other professional associations. Nearly all of its members are doctors working as specialists in reproductive medicine, and most of the rest are professors. The Society filed an application on September 1, 1994 with the PTO to register the mark, AMERICAN SOCIETY FOR REPRODUCTIVE MEDICINE.[1] On February 13, 1995, the Examining Attorney refused registration on the primary register be-

application, The American Fertility Society had already decided to change its name to the American Society for Reproductive Medicine, but had not yet done so.

cause, she concluded, the desired mark was chiefly geographically descriptive in violation of section 2(e)(2) of the Lanham Act, 15 U.S.C. § 1052(e)(2) (1994). In addition, the Examining Attorney refused registration on the grounds that a portion of the mark SOCIETY FOR REPRODUCTIVE MEDICINE was so highly descriptive that "no thought, imagination or perception is required to understand the exact nature of the applicant's services when confronted with [the term]."

 The Society responded by amending its application on August 11, 1995 to seek registration of its mark on the supplemental register, which does not proscribe geographically descriptive marks. *See* 15 U.S.C. § 1091 (1994). A mark may be registered on the supplemental register if it is capable of distinguishing the applicant's goods or services. Supplemental registration, however, confers considerably fewer advantages than principal registration. *See* J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 19:36 (4th ed. 1999) ("Supplemental registration confers no substantive trademark rights beyond those under common law.").

On September 26, 1995, the Examining Attorney issued a second office action refusing registration of the mark in its entirety on the supplemental register unless the Society disclaimed the phrase SOCIETY FOR REPRODUCTIVE MEDICINE. The Examining Attorney wrote:

[t]he applicant must disclaim the unitary phrase SOCIETY FOR REPRODUCTIVE MEDICINE apart from the mark as shown. SOCIETY is defined in the attached *dictionary definition* as "a voluntary association of individuals for common ends; *esp:* an organized group working together or periodically meeting because of common interests, beliefs, or profession." REPRODUCTION [sic] MEDICINE is the area of common interest for the applicant association. This is the *apt or common name of the*

*association services.* The applicant will note the attached trademark registrations and pending applications wherein the term SOCIETY is disclaimed apart from the trademark as generic matter. Many of the attached registrations show disclaimers of SOCIETY together with the name of the area of common interest of the particular association.

(emphases added). The Examining Attorney appended copies of other PTO applications in which the term SOCIETY and/or SOCIETY plus the name of the "area of common interest of the particular association" had been disclaimed by associations.

The Society answered the second office action on January 17, 1996, arguing that the requested disclaimer was inappropriate. The Society reasoned that mere descriptiveness is insufficient to bar registration on the supplemental register; rather, a disclaimer was appropriate in this case only if the entire phrase was generic for a "collection, group, organization, association, and/or even society of individuals, companies, or other entities with the interests in reproductive medicine, fertility, sterility, or other related branches of medicine." The Society pointed out that the dictionary definition of "society" did not "include within its parameters 'Society of Reproductive Medicine' as a noun or generic term for a body of individuals with a collective interest in this particular branch of medicine."

The Examining Attorney issued a third office action on March 15, 1996, making final the requirement that to register its mark, the Society must disclaim the phrase SOCIETY FOR REPRODUCTIVE MEDICINE because the phrase "is the generic name for the identified services." In the office action the Examining Attorney stated that the Society had disclaimed the term "society"[2] leaving the phrase "reproductive medicine," which she considered generic. She appended ninety-nine pages of references to "reproductive medicine" from Lexis–Nexis and cited *In*

---

**2.** This mistake was not rectified until October 15, 1996, one month after the Society had

appealed the examiner's decision to the Board.

*re Gould Paper Corp.*, 834 F.2d 1017, 5 USPQ2d 1110 (Fed.Cir.1987), for the proposition that a composite term can be generic without being defined in the dictionary or used as a composite term, if the term, as a whole, has no more meaning than the sum of the meanings of each of its constituent parts.

The Society appealed the Examining Attorney's decision to the Board, and a hearing was held on June 24, 1997. In a decision issued almost eleven months later on May 18, 1998 the Board upheld the Examining Attorney's requirement that the Society disclaim the phrase SOCIETY FOR REPRODUCTIVE MEDICINE, pursuant to 15 U.S.C. § 1056(a) (1994), which allows the "Commissioner [to] ... require the applicant to disclaim an unregistrable component of a mark otherwise registrable."

In its opinion, the Board examined the genericness of a component, SOCIETY FOR REPRODUCTIVE MEDICINE, of the mark, AMERICAN SOCIETY FOR REPRODUCTIVE MEDICINE, under the test articulated by this court in *H. Marvin Ginn Corp. v. International Ass'n of Fire Chiefs, Inc.*, 782 F.2d 987, 228 USPQ 528 (Fed.Cir.1986). See *Am. Fertility*, No. 74/568,765. In *Marvin Ginn*, as the Board observed, we held that:

> Determining whether a mark is generic [and thus not capable of distinguishing an applicant's services] ... involves a two-step inquiry: First, what is the genus of goods or services at issue? Second, is the term sought to be registered ... understood by the relevant public primarily to refer to that genus of goods or services?

782 F.2d at 990, 228 USPQ at 530.

The Board cited *In re Northland Aluminum Prods., Inc.*, 777 F.2d 1556, 1559, 227 USPQ 961, 963 (Fed.Cir.1985),[3] for the

proposition that evidence of the relevant public's understanding could be obtained from dictionaries, newspapers, magazines, trade journals and other publications. In the instant case, the Board found the relevant component generic based on numerous articles found by the Examining Attorney through a Lexis–Nexis search for the meaning of "reproductive medicine" and on the Society's recitation of its services in its application to characterize the word "society." No evidence of the relevant public's understanding of the phrase as a whole was provided.[4] Despite the lack of evidence of the public's understanding of the phrase as a whole, the Board held that the "combination of the terms 'society' and 'reproductive medicine' results in a designation, SOCIETY FOR REPRODUCTIVE MEDICINE, which is also generic." *Am. Fertility*, slip op. at 7 (citing *Gould* and *In re Associated Theatre Clubs Co.*, 9 USPQ2d 1660, 1988 WL 252332 (TTAB 1988)).

The Board justified this holding, despite the lack of evidence regarding the combination, by stating that "the fact that [the] applicant may be the first and only user of this generic designation does not justify registration if the term projects only generic significance." *Am. Fertility*, slip op. at 7. In a footnote to this last statement, the Board quoted *Gould* to rebut the dissent's position that the PTO must show evidence of generic use of the composite term by others as follows:

> We agree with Gould that "to refuse registration on the ground that an applicant seeks to register the generic name of the goods, the PTO must show that the word or expression inherently has such meaning in ordinary language, or that the public uses it to identify goods of other producers as well." (citations omitted) We hold, however, that the PTO has satisfied its evidentiary burden

---

3. *Northland* found BUNDT to be a generic term for a type of ring cake and thus not registrable as a mark for "ring cake mix" based on recipe entries in cookbooks and newspaper articles.

4. We note that newspaper articles which were quoted by the Board in its decision referred to the mark as a whole, but only in the context of referring to the Society itself, which is, of course, insufficient to render the mark generic.

if, as it did in this case, it produces evidence including dictionary definitions that the separate words joined to form a compound have a meaning identical to the meaning common usage would ascribe to those words as a compound. *Id.* at 8 n. 3 (quoting *Gould*, 834 F.2d at 1018, 5 USPQ2d at 1111–12). The Board neither interpreted this language nor expressly applied it to the facts of this case.

Administrative Trademark Judge Hanak dissented from the Board decision, writing that:

It is beyond dispute that "the burden of showing that a proposed trademark [or service mark] is generic remains with the Patent and Trademark Office." ... [I]n this case the Examining Attorney has failed to make of record any evidence whatsoever demonstrating that the unitary phrase SOCIETY FOR REPRODUCTIVE MEDICINE has been used in a generic sense.

*Am. Fertility*, slip op. at 9 (Hanek, J., dissenting). Administrative Trademark Judge Hanak quoted *In re Ferrero S.P.A.*, 24 USPQ2d 1155, 1992 WL 259301 (TTAB 1992), to support his conclusion that a "word or phase could be shown to be generic in the absence of 'clear evidence of generic use' by others only when that word or phrase was sought to be registered for 'a newly created product category.'" *Id.* at 12. Judge Hanak concluded that in this case there had been sufficient time for some evidence of generic usage to emerge if the term had been so used.

The Society appealed the Board's decision to this court in a timely fashion. We have jurisdiction over this appeal under 28 U.S.C. § 1295(a)(4)(B) (1994), and the applicant has standing and the right to appeal under 15 U.S.C. § 1071(a)(1) (1994).

## DISCUSSION

The principal question we address on appeal is whether the Examining Attorney and the Board applied the correct legal test when they evaluated the evidence and concluded that the phrase SOCIETY FOR REPRODUCTIVE MEDICINE was generic. Specifically, we address the question of whether the PTO may satisfy its burden of proving a phrase as a whole generic, based solely on the genericness of the phrase constituents. Three principal cases are relevant to our discussion: *H. Marvin Ginn Corp. v. International Ass'n of Fire Chiefs, Inc.*, 782 F.2d 987, 228 USPQ 528 (Fed.Cir.1986); *In re Merrill Lynch, Pierce, Fenner, and Smith, Inc.*, 828 F.2d 1567, 4 USPQ2d 1141 (Fed.Cir. 1987); and *In re Gould Paper Corp.*, 834 F.2d 1017, 5 USPQ2d 1110 (Fed.Cir.1987). We, therefore, turn first to a discussion of these three cases.

### I.

The first, *Marvin Ginn*, involved a petition to cancel registration of the trademark FIRE CHIEF as the title of a magazine covering issues of interest to fire fighters and management, circulated to fire departments throughout the country. See 782 F.2d at 988, 228 USPQ at 529. The Board granted the petition to cancel, concluding that the term FIRE CHIEF was generic because the term designated a "definable target audience to which the publication [was] directed." *Id.* at 989, 782 F.2d 987, 228 USPQ at 530. In addition, the Board found that the term FIRE CHIEF would be perceived by the relevant public as a generic term for a magazine of this type. See *id.*

This court reversed, holding that the "critical issue in genericness cases is whether members of the relevant public primarily use or understand the term sought to be protected to refer to the genus of goods or services in question." *Id.* at 989–90, 782 F.2d 987, 228 USPQ at 530 (citations omitted). Judge Rich,[5] writ-

**5.** The Honorable Giles Sutherland Rich died on June 9, 1999. Judge Rich, at age 95, was the oldest member of the federal judiciary in active service, then or ever. We remember him as one of this court's greatest jurists. All of us on the court were honored to serve with him.

ing for the court, noted that magazine titles presented a unique challenge in that such titles were not literally the genus or class name, but were about the class. He concluded that the term FIRE CHIEF was not generic because there was "no record evidence which suggests that the relevant portion of the public refers to a class of fire fighting publications as 'Fire Chief.' Furthermore, the term . . . is neither the name of the fire-fighting industry nor about the fire-fighting industry." *Id.* at 991, 228 USPQ at 532.

In *Merrill Lynch*, the applicant company appealed from a Board decision holding generic, and thus unregistrable, the term CASH MANAGEMENT ACCOUNT as a service mark for stock brokerage services, administration of money market fund services, and related money management services. This court reversed, noting that the burden falls on the PTO to show that a proposed mark is generic, and concluding that burden had not been met. *See* 828 F.2d at 1571, 4 USPQ2d at 1143. We quoted the Trademark Manual of Examining Procedure as requiring a "substantial showing by the Examining Attorney that the matter is in fact generic . . . based on clear evidence of generic use." *Id.* We held that there was no clear evidence that the financial community used the term as a "generic, common descriptive term for the brokerage services to which Merrill Lynch first applied the term," and, in fact, determined that there was no evidence of record that the term had been used before being introduced by Merrill Lynch. *Id.* We, therefore, held the term CASH MANAGEMENT ACCOUNT to not describe "immediately and unequivocally" the purpose and function of the services at issue to members of the relevant public and, therefore, not to be generic. *Id.,* 828 F.2d 1567, 4 USPQ2d at 1144.

In *Gould*, the applicant attempted to register the mark SCREENWIPE for antistatic wipes, used to clean computer and television screens. The Board found the mark unregistrable as generic. On appeal, the applicant argued that the Examining Attorney had only proven the con-

stituents of the mark, "screen" and "wipe," generic, without proving generic the compound mark SCREENWIPE.

Our opinion in *Gould* addressed the following question: whether the single word SCREENWIPE formed by connecting the two constituent terms "screen" and "wipe" resulted in a meaning that was no less generic than that of the two juxtaposed words (as could be ascertained by referring to dictionary meanings and other evidence of common usage). We held that Gould's own description of the product provided adequate evidence that merely combining the words "screen" and "wipe" did not render the mark registerable. We noted that "Gould's own submissions provided the most damaging evidence [that the word is generic]." Gould's product itself bore the words, "a . . . wipe . . . for . . . screens." *Gould,* 834 F.2d at 1019, 5 USPQ2d at 1112. This court thus held that the compound word SCREENWIPE, based both on the dictionary definition of the individual terms and on the applicant's own package advertising and instructions ("Open packet, unfold wipe. Wipe screen . . . .") was as generic as the individual terms themselves. We determined that this combination of two words, even reversed as to order, in the context of the product's package label and intended use as a wipe for computer screens, was sufficient evidence of the fact that the mark "is generic and would be perceived by the purchasing public as merely a common name for its goods rather than a mark identifying the good's source." *Id.* We noted that we had reached similar results in other cases, upholding as generic, for example, TURBODIESEL for diesel engines with exhaust-driven turbine superchargers, *see Cummins Engine Co. v. Continental Motors Corp.,* 53 C.C.P.A. 1167, 359 F.2d 892, 149 USPQ 559 (CCPA 1966), and GASBADGE for a gas exposure monitoring badge, *see In re Abcor Dev. Corp.,* 588 F.2d 811, 816, 200 USPQ 215, 219 (CCPA 1978) (holding GASBADGE generic because evidence of the context in which a mark is used on package labels is

probative of the reaction of prospective buyers).

We, therefore, held that the PTO can satisfy its evidentiary burden by producing "evidence including dictionary definitions that the separate words joined to form a compound have a meaning [to the relevant public] identical to the meaning common usage would ascribe to those words as a compound." *Gould,* 834 F.2d at 1018, 5 USPQ2d at 1111–12. In other words, if the compound word would plainly have no different meaning from its constituent words, and dictionaries, or other evidentiary sources, establish the meaning of those words to be generic, then the compound word too has been proved generic. No additional proof of the genericness of the compound word is required. But *Gould* did not purport to modify *Marvin Ginn,* nor could it have since both were panel decisions. In such a case, the earlier, *Marvin Ginn,* is binding precedent on the later, *Gould. See Newell Cos. v. Kenney Mfg. Co.,* 864 F.2d 757, 765, 9 USPQ2d 1417, 1423 (Fed.Cir.1988). In any event, the *Gould* court cited, and seemingly sought to follow, *Marvin Ginn.*

## II.

We turn now to the mark at issue in the instant case, and analyze the PTO's evidence about its genericness in light of these decisions. We must determine whether the Board clearly erred in finding that the PTO satisfied its burden of showing that the phrase SOCIETY FOR REPRODUCTIVE MEDICINE is generic as applied to the Society's services, namely, promoting the interests of the reproductive medicine profession.

To satisfy its burden, the PTO offered the following evidence: (1) a dictionary definition of the word "society," (2) third-party applications and registrations for marks containing (and disclaiming) the term "society,"[6] and (3) articles from Lexis–Nexis reflecting common uses of the term "reproductive medicine." The Board

found this evidence sufficient to conclude that SOCIETY FOR REPRODUCTIVE MEDICINE was apt and "as such ... a generic name of applicant's services." *Am. Fertility,* slip op. at 6. This is not the correct test for genericness.

Rather, the correct legal test for genericness, as set forth in *Marvin Ginn,* requires evidence of "the genus of goods or services at issue" and the understanding by the general public that the mark refers primarily to "that genus of goods or services." AMERICAN BAR ASSOCIATION is certainly an apt name for a national association of lawyers; however, it is not used as a generic name for national associations of lawyers (see, e.g., NATIONAL ASSOCIATION OF WOMEN LAWYERS; FEDERAL BAR ASSOCIATION; AMERICAN HEALTH LAWYERS ASSOCIATION; NATIONAL LAWYERS ASSOCIATION). In this, as in all cases, therefore, the PTO must be able to satisfy both elements of the test as set forth in the controlling precedent of *Marvin Ginn.*

Aptness is insufficient to prove genericness. The PTO must prove: (1) what the genus of the services the Society provides is; and (2) that the relevant public understands the phrase SOCIETY FOR REPRODUCTIVE MEDICINE to primarily refer to that genus of services provided by the Society. As the PTO produced no evidence at all of the public's understanding of the phrase as it relates to the Society's services, it clearly failed to carry its burden. The Board cannot simply cite definitions and generic uses of the constituent terms of a mark, or in this case, a phrase within the mark, in lieu of conducting an inquiry into the meaning of the disputed phrase as a whole to hold a mark, or a phrase within in the mark, generic.

6. In some cases the applications and registrations disclaimed, in addition to the word "society," the phrase describing the society's field of interest.

In contrast to *Gould*, this is not a case where the PTO has clearly proven that the mark as a whole is no less generic than its constituents. Rather, this is a case where, like *Merrill Lynch* and *Marvin Ginn*, there was no evidence produced that the term is used by the relevant public to refer to a similar class (in the instant case, the class of services provided by societies). Therefore, the Board erred in finding that the proven genericness of the words, "society," and "reproductive medicine," without more, rendered generic the phrase SOCIETY FOR REPRODUCTIVE MEDICINE.

*Gould* is limited, on its facts, language, and holding, to compound terms formed by the union of words. It is legally erroneous to attempt to apply the language quoted below to phrases consisting of multiple terms, which are not "joined" in any sense other than appearing as a phrase.

> The compound immediately and unequivocally describes the purpose, function and nature of the goods as Gould itself tells us. Gould has simply joined the two most pertinent and individually generic terms applicable to its product, and then attempts to appropriate the ordinary compound thus created as its trademark. In this instance, the terms remain as generic in the compound as individually, and the compound thus created is itself generic.

*Gould*, 834 F.2d at 1019, 5 USPQ2d at 1112 (citations omitted).

The correct legal test, which was not applied by the Board, is set forth in *Marvin Ginn* and is to be applied to a mark, or disputed phrase thereof, as a whole, for the whole may be greater than the sum of its parts. Properly interpreted, *Gould* does not justify a short-cut around this test, but rather found that the evidence presented met this burden.

The Board held that the whole phrase SOCIETY FOR REPRODUCTIVE MED-ICINE was rendered generic based on the evidence of record, which relates only to the constituents of the phrase, "society" and "reproductive medicine," holding that "the combination of the terms 'society' and 'reproductive medicine' results in a designation, SOCIETY FOR REPRODUCTIVE MEDICINE, which is also generic." *Am. Fertility*, slip op. at 7. As Administrative Trademark Judge Hanak points out in his dissent, "in this case the Examining Attorney has failed to make of record any evidence whatsoever demonstrating that the unitary phrase SOCIETY FOR REPRODUCTIVE MEDICINE has been used in a generic sense." *Id.* at 9. Administrative Trademark Judge Hanak then pointed out that:

> if the term SOCIETY FOR REPRODUCTIVE MEDICINE is truly an "apt or common name" for applicant's services, th[e]n it is hard to explain how the Examining Attorney could not find even one example of generic usage of this "apt or common name." ... The fact that there is not even one example of the use of the term SOCIETY FOR REPRODUCTIVE MEDICINE *by others* demonstrates that the term is not a generic name (i.e. apt or common name) for applicant's services.

*Id.* at 10 (emphasis added).

The Board erred in applying the wrong legal test, which it derived from *Gould*, to the facts at issue here. The correct legal test for genericness of phrases, as set forth in *Marvin Ginn*, requires evidence of "the genus of goods or services at issue" and the understanding by the general public that the mark refers primarily to "that genus of goods or services." *Gould* provides additional assistance in determining the genericness of compound words only, and holds that if the PTO can prove (1) the public understands the individual terms to be generic for a genus of goods and species; and (2) the public understands the joining of the individual terms into one

compound word to lend no additional meaning to the term, then the PTO has proven that the general public would understand the compound term to refer primarily to the genus of goods or services described by the individual terms. The PTO here failed to provide any evidence that the phrase as a whole, SOCIETY FOR REPRODUCTIVE MEDICINE, has acquired no additional meaning to the relevant public than the terms "society" and "reproductive medicine" have individually. The Board must now apply the *Marvin Ginn* test to the phrase as a whole, and not focus only on the individual terms.

### III.

We hold that the Board applied an incorrect legal test to the evidence before it, ruling the disputed phrase of the mark generic as a whole based solely on evidence that its constituent elements, "society" and "reproductive medicine," were generic. We therefore vacate the rejection of the application and remand for a re-determination, based on the proper legal test as set forth in *Marvin Ginn* and discussed above. The decision of the Board holding generic the phrase SOCIETY FOR REPRODUCTIVE MEDICINE in the mark AMERICAN SOCIETY FOR REPRODUCTIVE MEDICINE is thus

*VACATED AND REMANDED*