THIS DECISION IS CITABLE
AS PRECEDENT OF THE
TTAB

Paper No. 15
TJQ
Mailed: August 28, 2002

**UNITED STATES PATENT AND TRADEMARK OFFICE**
_____

**Trademark Trial and Appeal Board**
_____

In re CyberFinancial.Net, Inc.
_____

Serial No. 75/482,561
_____

Denise A. Ciampitti of Butera, Beausang, Cohen & Brennan for applicant.

Erica D.B. Glembocki, Trademark Examining Attorney, Law Office 102 (Thomas V. Shaw, Managing Attorney).
_____

Before Quinn, Bucher and Bottorff, Administrative Trademark Judges.

Opinion by Quinn, Administrative Trademark Judge:

CyberFinancial.Net, Inc. filed an application to register on the Supplemental Register the designation BONDS.COM for "providing information regarding financial products and services via a global computer network and providing electronic commerce services via a global computer network, namely, investment research, subscription services, market commentary, portfolio analysis, debt instrument conversion, yield performance, and pricing analysis, with respect to taxable and tax exempt debt

instruments, and other related investment products and services, namely, investment securities."[1]

The Trademark Examining Attorney refused registration under Section 23 of the Trademark Act on the ground that the designation sought to be registered is generic and, thus, incapable of registration on the Supplemental Register.

When the refusal was made final, applicant appealed. Applicant and the Examining Attorney submitted briefs. Applicant did not request an oral hearing.

The Examining Attorney maintains that the designation BONDS.COM is generic because it comprises the generic term "bonds" and an entity designator which lacks trademark significance, namely, the generic top-level domain ("TLD") ".com."  In support of the refusal, the Examining Attorney submitted dictionary definitions of "bond," ".com," and "dot com company"; excerpts of Web sites of entities in the financial trade; and Examination Guide No. 2-99, dated September 29, 1999, pertaining to the registrability of marks comprising, in whole or in part, domain names.

---

[1] Application Serial No. 75/482,561, filed May 11, 1998, alleging a bona fide intention to use the mark in commerce.  Applicant subsequently filed an amendment to allege use setting forth a date of first use anywhere and a date of first use in commerce of June 9, 1999.  The application originally was filed by John B. Beausang, and subsequently was assigned to the above-mentioned applicant.  The assignment is recorded in the Office records.

In urging that the refusal be reversed, applicant asserts that ".com" is not a word and is not a generic term for selling via the Internet.  Applicant goes on to state that "there is no evidence that the relevant public refers to this class of retailers as 'BONDS.COM.'"  (brief, p. 4).  Applicant also points to the absence of any listings of "bonds.com" in dictionaries, and relies on the fact that there are multiple meanings for the term "bond(s)."  In addition to the dictionary evidence, applicant submitted promotional materials covering its services and an affidavit of John B. Beausang, applicant's president, wherein he asserts that the relevant public would not understand applicant's mark BONDS.COM to be an alternative for the generic term "bond."  Mr. Beausang states that BONDS.COM is a unique composite mark, that there are multiple meanings of the term "bonds," that applicant does not buy or sell bonds, and that applicant's services, as recited in the application, encompass a broad range of financial tools, e.g., stocks, options, debentures banking and taxes, which the term "bonds" does not encompass.

Section 23 of the Trademark Act provides for registration on the Supplemental Register of marks "capable of distinguishing applicant's goods or services and not registrable on the Principal Register."  Generic terms are

common names that the relevant purchasing public understands primarily as describing the class of goods or services being sold. In re Merrill Lynch, Pierce, Fenner & Smith, Inc., 828 F.2d 1567, 4 USPQ2d 1141, 1142 (Fed. Cir. 1987). They are by definition incapable of indicating a particular source of the goods or services, and cannot be registered as trademarks. In re Dial-A-Mattress Operating Corp., 240 F.3d 1341, 57 USPQ2d 1807, 1810 (Fed. Cir. 2001). The Office bears the burden of proving that a term is generic. In re The American Fertility Society, 188 F.3d 1341, 51 USPQ2d 1832, 1834 (Fed. Cir. 1999).

The determination of whether a term is generic involves a two-part inquiry: First, what is the category or class of the goods or services at issue? Second, is the term sought to be registered understood by the relevant public primarily to refer to that category of goods or services? H. Marvin Ginn Corp. v. International Association of Fire Chiefs, Inc., 782 F.2d 987, 228 USPQ 528, 530 (Fed. Cir. 1986).

With respect to the first part of the genericness inquiry, the class or category of services at issue here is that of information and electronic commerce services regarding financial products, including bonds, provided via

the Internet. Applicant's homepage describes its Web site as a "financial resource guide."

We next turn to the second step of the Ginn inquiry, that is, whether the relevant public understands the term BONDS.COM to refer to the category of services at issue, namely, information and electronic commerce services regarding financial products, including bonds, provided via the Internet.[2] We find that the term is so understood.

The term "bond" is defined as "a certificate of debt issued by a government or corporation guaranteeing payment of the original investment plus interest by a specified future date." The American Heritage Dictionary of the English Language (3rd ed. 1992). The term "bond" is the name of a specific product in the financial field. As noted above, applicant's Internet information services and electronic commerce services are directed, in part, to bonds. Because "bonds" is the name of one of the financial products which comprise the subject matter of applicant's services, the term is likewise a generic name for the information services and electronic commerce services themselves. Those wishing to provide Internet information

---

[2] Although applicant's president states in his affidavit that applicant does not buy or sell bonds, we find that the term "financial products" in the recitation of services includes "bonds."

services and electronic commerce services involving bonds would need to use, and are entitled to use, the generic term in connection with such services.

The Board has held in the past that a term which is the generic name of a particular category of goods is likewise generic for any services which are directed to or focused on that class of goods.  See:  In re A La Vieille Russie Inc., 60 USPQ2d 1895 (TTAB 2001)[RUSSIANART generic for particular field or type of art and also for dealership services directed to that field]; In re Log Cabin Homes Ltd., 52 USPQ2d 1206 (TTAB 1999)[because LOG CABIN HOMES is generic for a particular type of building, it is also generic for architectural design services directed to that type of building, and for retail outlets featuring kits for construction of that type of building]; In re Web Communications, 49 USPQ2d 1478 (TTAB 1998)[because WEB COMMUNICATIONS is generic for publication and communication via the World Wide Web, it is also generic for consulting services directed to assisting customers in setting up their own Web sites for such publication and communication); and In re Harcourt Brace Jovanovich, Inc., 222 USPQ 820 (TTAB 1984)[LAW & BUSINESS incapable of distinguishing applicant's services of arranging and conducting seminars in the field of business law].

In the present case, although the recitation of services relates to a variety of financial products, we find that the "taxable and tax exempt debt instruments" listed in the present application encompass bonds. And, if applicant's mark BONDS.COM is generic as to part of the services applicant offers under its mark, the mark is unregistrable. In re Analog Devices Inc., 6 USPQ2d 1808, 1810 (TTAB 1988), *aff'd without pub. op.,* 871 F.2d 1097, 10 USPQ2d 1879 (Fed. Cir. 1989); and In re Allen Electric and Equipment Co., 458 F.2d 1404, 173 USPQ 689, 690 (CCPA 1972)[genericness is determined on the basis of the goods and/or services identified in the involved application].

The term ".com" is defined in the following ways: "a domain type used for Internet locations that are part of a business or commercial enterprise" CNET Glossary (1998); "abbreviation of commercial organization (in Internet addresses)" The American Heritage Dictionary of the English Language (4th ed. 2000); and "Internet abbreviation for company: used to show that an Internet address belongs to a company or business" Cambridge Dictionaries Online (2001). The record also includes definitions of "Dot Com Company" as "[a] company which operates its business mainly on the Internet, using '.com' URLs," Newton's Telecom Dictionary (2001); and "dot-com company"as "[a]n

organization that offers its services or products exclusively on the Internet." The Computer Glossary (9th ed. 2001).[3]

The issue presently before us was squarely addressed by the Board in the recent decision of In re Martin Container, Inc., ___USPQ2d___ (TTAB June 11, 2002) (application Serial No. 75/553,426). In that case, the Board found the designation CONTAINER.COM to be generic and incapable of registration on the Supplemental Register when used in connection with "retail store services and retail services offered via telephone featuring metal shipping containers" (Class 35) and "rental of metal shipping containers" (Class 39). The Board concluded that

> what applicant seeks to register is
> simply a generic term ["container"],
> which has no source-identifying
> significance in connection with
> applicant's services, in combination
> with the top level domain indicator
> [".com"], which also has no source-
> identifying significance, and that
> combining the two does not create a
> term which has somehow acquired the

---

[3] The last four definitions were attached to the Examining Attorney's appeal brief. We grant the request to take judicial notice of this evidence. See: University of Notre Dame du Lac v. J.C. Gourmet Food Imports Co., 213 USPQ 594 (TTAB 1982), aff'd, 703 F.2d 1372, 217 USPQ 505 (Fed. Cir. 1983). In doing so, we recognize that one of the definitions is from an online resource. However, as indicated in the Web page printout, the Cambridge International Dictionary of English is available in book form. Cf.: In re Total Quality Group Inc., 51 USPQ2d 1474, 1475-76 (TTAB 1999).

> capability of identifying and
> distinguishing applicant's services.

The Board viewed CONTAINER.COM more like a compound term than a phrase, and cited to In re Gould Paper Corp., 834 F.2d 1017, 5 USPQ2d 1110 (Fed. Cir. 1987) in finding it generic.  The Board stated that "to the average customer seeking to buy or rent containers, 'CONTAINER.COM' would immediately indicate a commercial web site on the Internet which provides containers."  In making its determination, the Board analogized to the cases of In re Paint Products Co., 8 USPQ2d 1863 (TTAB 1988) [PAINT PRODUCTS CO. held incapable of identifying and distinguishing paints], and In re E.I. Kane, Inc., 221 USPQ 1203 (TTAB 1984) [OFFICE MOVERS, INC. held incapable of identifying and distinguishing office facilities moving services].  The Board also cited to the views espoused by Professor McCarthy:

> a top level domain ["TLD"] indicator
> [such as ".com"] has no source
> indicating significance and cannot
> serve any trademark [or service mark]
> purpose.  The same is true of other
> non-distinctive modifiers used in
> domain names, such as "http://www" and
> "html"...[because] the TLD ".com"
> functions in the world of cyberspace
> much like the generic indicators
> "Inc.," "Co.," or "Ltd." placed after
> the name of a company.

> A top level domain indicator like
> ".com" does not turn an otherwise
> unregistrable designation into a
> distinctive, registrable trademark [or
> service mark]. Thus, for example,
> adding a ".com" to a generic term, such
> as <bankingnews.com> would not change
> the basic generic nature and the
> composite will probably be found
> generic and unregistrable for the
> service of providing information in the
> field of banking.

1 J. McCarthy, McCarthy on Trademarks and Unfair

Competition, § 7:17.1 at pp. 7-28.1 to 7-29 (4th ed. 2002).

We reach the same result here as did the Board in

Martin Container. Applicant seeks to register the generic

term "bonds," which has no source-identifying significance

in connection with applicant's services, in combination

with the top level domain indicator ".com," which also has

no source-identifying significance. And combining the two

terms does not create a term capable of identifying and

distinguishing applicant's services. The public would not

understand BONDS.COM to have any meaning apart from the

meaning of the individual terms combined. In re Gould

Paper Corp., supra. Simply put, the TLD ".com," as shown

by the Examining Attorney's evidence, signifies to the

public that the user of the domain name constitutes a

commercial entity.

We are not the first to find that the TLD designation ".com" has no trademark significance. This finding is consistent with the Ninth Circuit's decision in Brookfield Communications, Inc. v. West Coast Entertainment Corp., 174 F.3d 1036, 50 USPQ2d 1545, 1558 ["the '.com' top-level domain signifies the site's commercial nature"] as well as some lower court decisions. See: 555.1212.com Inc. v. Communication House International Inc., 157 F.Supp2d 1084, 59 USPQ2d 1453, 1458 (N.D. Cal. 2001) wherein the court stated the following:

> While no Circuit Court has specifically addressed this issue [of when one adds a ".com" to a generic term], the Ninth Circuit has held that "[t]he domain name is more than a mere address: like trademarks, second-level domain names communicate information as to source." Brookfield Communications, Inc. v. West Coast Entertainment Corp., 174 F.3d 1036, 50 USPQ2d 1545. Second-level domain names are the words before the ".com." The ".com" is considered a top-level domain name. Thus, the Ninth Circuit has implied that the source identifying nature of a domain name, if any, lies in the characters which precede a ".com" not the ".com" itself. Following the Ninth Circuit's lead in Brookfield, one district court has held that generic top level domain names such as ".com" are not source identifying words and are therefore generic.

See, also:  Image Online Design, Inc. v. Core Association, 120 F.Supp2d 870, 877 (C.D. Cal. 2000); and Nissan Motor Co. v. Nissan Computer Corp., 204 F.R.D. 460, 466-67 (C.D. Cal. 2001).

In the same manner that the designation BONDS CO. ("CO. standing for "COMPANY") would be generic and not registrable for applicant's services, we find the designation BONDS.COM likewise to be unregistrable.  Over 100 years ago, the Supreme Court, in the case of Goodyear's India Rubber Glove Mfg. Co. v. Goodyear Rubber Co., 128 US 598, 602 (1888), indicated that "[t]he addition of the word 'Company' [to an otherwise unregistrable mark] only indicates that parties have formed an association or partnership to deal in such goods..." and does not render the mark registrable.  The Supreme Court noted that adding "company" to "wine" or "cotton" or "grain" did not magically create a term that was no longer generic:

> [P]arties united to produce or sell wine, or to raise cotton or grain, might style themselves Wine Company, Cotton Company, or Grain Company; but by such description they would in no respect impair the equal right of others engaged in similar business to use similar designations, for the obvious reason that all persons have a right to deal in such articles, and to publish that fact to the world.  Names of such articles cannot be adopted as trade-marks, and be thereby

> appropriated to the exclusive right of
> any one; nor will the incorporation of
> a company in the name of an article of
> commerce, without other specification,
> create any exclusive right to use of
> the name. Id. at 602-03.

In its hypothetical, the Supreme Court did not hint that the outcome was somehow contingent upon whether there was evidence showing that the public used the exact term "wine company." We view the Supreme Court's reasoning, although expressed so long ago, to be equally applicable today to cyberspace domain names.

Following the reasoning of the Supreme Court, the term BONDS CO. would be generic for services relating to bonds, and competitors should be allowed to freely use marks such as ACME BONDS CO. or UNITED BONDS CO. to identify and distinguish their services. In the same manner, a designation such as BONDS.COM should be freely available for others to adopt so that designations such as ACMEBONDS.COM or UNITEDBONDS.COM could be used by competitors to identify and distinguish their services from others in the field. See also: Trademark Manual of Examining Procedure, §§ 1209.03(m) and 1215.05 (3rd ed. 2002).

Applicant relies heavily on the holding in Dial-A-Mattress. In that case, the Federal Circuit reversed the

Board's holding affirming the genericness refusal to register 1-888-MATRESS as a mark for "telephone shop-at-home services in the field of mattresses." In arguing that "1-800-" phone number and ".com" designations are analogous and should be treated the same, applicant points to Examination Guide 2-99, dated September 29, 1999, which essentially indicates that such designations would be similarly treated by the Office. After Dial-A-Mattress, the argument goes, ".COM" marks should be registrable to the same extent as are phone number marks.

We would point out, though, that Examination Guide 2-99 has been superceded. The foreword to the recently revised edition of the TMEP (dated January 2002) indicates that "[p]olicies stated in this revision supercede any previous policies stated in the second edition, examination guides, or any other statement of Office policy, to the extent that there is any conflict." The revision distinguishes the Office's treatment of phone numbers (§ 1209.03(l)), recognizing the import of the holding in Dial-A-Mattress, from domain names (§ 1209.03(m)).

We recognize, of course, as did the Board panel in Martin Container, that there are similarities between a toll-free telephone number and a domain name in that neither is the name of the category of services, and each

14

typically can be used by only one entity at a time. However, we view the present case as distinguishable from Dial-A-Mattress because, although telephone numbers are unique, that is, a given ten-digit number can be used by only one entity at a time, domain names may be up to sixty-three numbers or characters (plus the characters used to identify the TLD), so that many domain names could contain the same root terms (in many instances, generic root terms), combining them with different numbers or letters as prefixes and/or suffixes. Financial entities that compete with applicant have a competitive need to use the matter sought to be registered, BONDS.COM, as part of their own domain names and trademarks. In this connection, we point to the Examining Attorney's evidence that at least two others in the financial field are using the root term "bonds.com" as an element of their domain names. Specifically, two Web sites show the adoption of the generic designation BONDS.COM and the addition of other matter to it to form the domain names of "bonds-online.com" and "investinginbonds.com."

We likewise find Dial-A-Mattress distinguishable from the present case for the other reasons set forth in Martin Container (slip opinion at pp. 10-11):

The mark there was a toll-free telephone number which featured a misspelled generic term instead of the usual seven-digit number following the area code.  As the Court characterized it, the proposed mark was a mnemonic combining numbers with a word, which was more of a "phrase" than a "compound word."  Here the mark consists of a correctly spelled generic term followed by ".com."  Unlike the toll-free area code in Dial-A-Mattress, the ".com" portion of applicant's mark indicates that applicant is a commercial enterprise.

**********

In the case before us, contrary to Dial-A-Mattress, the mark cannot be characterized as a mnemonic phrase.  It is instead a compound word, a generic term combined with the top level domain indicator, ".COM."

In finding that the designation BONDS.COM as a whole is no less generic than its constituents, we recognize the Federal Circuit's statement relative to Gould in American Fertility Society (at p. 1837):

Gould is limited, on its facts, language, and holding, to compound terms formed by the union of words.  It is legally erroneous to attempt to apply the language quoted below to phrases consisting of multiple terms, which are not "joined" in any sense other than appearing as a phrase.

The compound immediately and unequivocally describes the purpose, function and nature of the goods as Gould itself tells us. Gould has simply joined the two

16

> most pertinent and individually generic terms applicable to its product, and then attempts to appropriate the ordinary compound thus created as its trademark.  In this instance, the terms remain as generic in the compound as individually, and the compound thus created is itself generic.
>
> Gould, 834 F.2d at 1019, 5 USPQ2d at 1112 (citations omitted).

BONDS.COM is properly considered a compound word in this analysis.  The terms "bond" and ".com" are joined as a compound word and appear without any space or separation between them.  This is analogous to Gould, where "screen" and "wipe" appeared as the compound "screenwipe," and differs from American Fertility, where the Federal Circuit held that the terms "Society for Reproductive Medicine" were not "...'joined' in any sense other than appearing as a phrase."  American Fertility Society, supra at 1837. In reaching our conclusion, we have considered the designation sought to be registered as a whole.  See: Estate of P.D. Beckwith, Inc. v. Comm'r of Patents, 252 U.S. 538, 545-46 (1920).  We would add that even if the designation BONDS.COM were viewed as a phrase, we would reach the same result here.

Applicant's ownership of the previously issued Registration No. 2,401,043 for the designation STOCKS.COM

for "providing information about investment securities for online investors and professional traders via a global computer network" does not compel a different result herein.[4] The registration issued on October 31, 2000 on the Supplemental Register. While uniform treatment under the Trademark Act is an administrative goal, our task in this appeal is to determine, based on the record before us, whether applicant's particular mark sought to be registered here is generic. As is often stated, each case must be decided on its own merits. See, e.g.: In re Best Software Inc., 58 USPQ2d 1314 (TTAB 2001). Neither the current Examining Attorney nor the Board is bound by the prior action of the Examining Attorney who examined applicant's earlier-filed application, now registration. In re Nett Designs Inc., 236 F.3d 1339, 57 USPQ2d 1564, 1566 (Fed. Cir. 2001) ["Even if some prior registrations had some characteristics similar to [applicant's] application, the PTO's allowance of such prior registrations does not bind the Board or this court."].

Decision: The refusal to register is affirmed.

---

[4] Applicant failed to submit a photocopy of the registration, and merely referred to it in a response. See: In re Duofold Inc., 184 USPQ 638, 640 (TTAB 1974). However, the Examining Attorney treated the registration to be of record and, thus, we have considered the registration in reaching our decision.