THIS OPINION IS CITABLE
AS PRECEDENT OF THE
TTAB

Mailed:
July 25, 2006

**UNITED STATES PATENT AND TRADEMARK OFFICE**
_____

**Trademark Trial and Appeal Board**
_____

In re Rodale Inc.
_____

Serial No. 78369245
_____

Jody H. Drake, Kevin G. Smith and Gary D. Krugman of
Sughrue Mion, PLLC for Rodale Inc.

Mrs. A.D. Saunders, Trademark Examining Attorney, Law
Office 109 (Dan Vavonese, Managing Attorney).
_____

Before Bucher, Grendel and Holtzman, Administrative
Trademark Judges.

Opinion by Grendel, Administrative Trademark Judge:

Applicant seeks registration on the Supplemental

Register of the mark NUTRITION BULLETIN (in standard

character form) for services recited in the application (as

amended) as "providing information in the field of health

and diet via a web site on the Internet," in Class 44.[1]

_____

[1] Serial No. 78369245, filed February 17, 2004.  The application
is based on use in commerce under Trademark Act Section 1(a), 15
U.S.C. §1051(a), and April 2002 is alleged to be the date of
first use of the mark anywhere and the date of first use of the
mark in commerce.  As originally filed, the application sought

At issue in this appeal is the Trademark Examining Attorney's final refusal to register applicant's mark on the Supplemental Register on the ground that it is generic and therefore incapable of functioning as a mark for the recited services. Trademark Act Section 23, 15 U.S.C. §1091.

The appeal is fully briefed, but no oral hearing was requested. We affirm the refusal to register.

To be registrable on the Supplemental Register, the matter sought to be registered must be "capable of distinguishing applicant's goods or services." Trademark Act Sections 23(a), 23(c). "Generic terms are common names that the relevant purchasing public understands primarily as describing the genus of goods or services being sold. They are by definition incapable of indicating a particular source of the goods or services." *In re Dial-A-Mattress Operating Corp.*, 240 F.3d 1341, 57 USPQ2d 1807, 1810 (Fed.

---

registration of the mark on the Principal Register. After the Trademark Examining Attorney issued a first Office action refusing registration on the ground of mere descriptiveness under Trademark Act Section 2(e)(1), applicant amended the application to one seeking registration on the Supplemental Register. The application also has been amended to include applicant's claim of ownership of six prior registrations, i.e., Nos. 2974874, 2984357, 2914031, 2956178, 2920260 and 2937172. For the first time in its reply brief, applicant has offered to disclaim BULLETIN apart from the mark as shown.

Cir. 2001)(citations omitted).  Because they are incapable of identifying source, generic terms are not registrable on the Supplemental Register.

Our primary reviewing court has stated:

> The determination of whether a mark is generic is made according to a two-part inquiry: "First, what is the genus of the goods or services at issue?  Second, is the term sought to be registered ... understood by the relevant purchasing public primarily to refer to that genus of goods or services?"

*In re Dial-A-Mattress Operating Corp.*, *supra*, 57 USPQ2d at 1810, quoting from *H. Marvin Ginn Corp. v. Int'l Ass'n of Fire Chiefs, Inc.*, 782 F.2d 987, 989-90, 228 USPQ 528, 530 (Fed. Cir. 1986).  The Office bears the burden of establishing genericness based on clear evidence of generic use.  *In re American Fertility Society*, 188 F.3d 1341, 51 USPQ2d 1832 (Fed. Cir. 1999).  "Any competent source suffices to show the relevant purchasing public's understanding of a contested term, including purchaser testimony, consumer surveys, dictionary definitions, trade journals, newspapers and other publications."  *In re Dial-A-Mattress Operating Corp.*, *supra*, 57 USPQ2d at 1810.  Where (as in this case) the matter sought to be registered is a phrase (rather than a compound word), the Office must provide more than mere dictionary definitions showing the

genericness of the component words; "it must conduct an inquiry into 'the meaning of the disputed phrase as a whole.'" *Id.*, quoting from *In re American Fertility Society, supra*, 51 USPQ2d at 1836.

The evidence of record in this case includes the following. Applicant's specimen of use is a printout of a page from its menshealth.com website, under the general heading "Nutrition." (The other available headings or pages are listed as "Fitness," "Sex," "Health," "Lifestyle," and "Weight Loss.") The page bears the headline "Nutrition Bulletin January/February 2004" with the subhead "Nutrition news you can use."

Also of record is the following dictionary definition of "nutrition":[2]

> 1. The process of nourishing or being nourished, especially the process by which a living organism assimilates food and uses it for growth and for replacement of tissues. 2. The science or study that deals with food and nourishment, especially in human beings. 3. A source of nourishment; food.

Also of record is the following dictionary definition of "bulletin":[3]

---

[2] The American Heritage Dictionary of the English Language (3d ed. 1992).

[3] The American Heritage Dictionary of the English Language (3d ed. 1992).

> 1. A brief report, especially an official statement on a matter of public interest issued for immediate publication or broadcast. 2. A brief update or summary of current news, as on television or radio or in a newspaper. 3. A periodical, especially one published by an organization or society. 4. A printed program, especially one listing the order of worship for a religious service: *a church bulletin*.

The Trademark Examining Attorney has submitted two NEXIS articles showing uses of "nutrition bulletin" in the press. These are (emphasis added):

> Parents and the corporations that increasingly write the national menu need to take heed: the products the children are ingesting are making them sick. Here is a sampling from a buffet of recent unhappy **nutrition bulletins**: ... Austin Statesman-American (December 31, 1998);
>
> Born in Lyons, N.Y., Mr. Dapolito graduated from the Crane School of Music at the State University of New York at Potsdam. He was employed full time as senior assistant editor of a food and **nutrition bulletin** published by MIT's International Food and Nutrition Program at its Center for International Studies. The Boston Globe (August 9, 1990).

Also of record are the following excerpts from seven Internet web pages showing uses of "nutrition bulletin"

(emphasis added):

The MSUE on-line bulletin office provides educators with additional **nutrition bulletins** that may be ordered in hard copy.
(Michigan State University);

To receive free occasional special mailings of **nutrition bulletins**, please e-mail your name, address...
(Dr. Arnold J. Susser);

Between the food commercials you see on TV every day and the many **nutrition bulletins** and reports you hear about on the news every night, you get a huge amount of information about the fats that you eat...
(HowStuffWorks);

The site leads you to several food and **nutrition bulletins** several of which you can read or print online.
(Washburn County (WI));

Mayo Clinic Online – Reliable source for health information.  Includes **nutrition bulletins** and recipes too.
(Pauline Haass Public Library);

The American Association of Advertising Agencies submitted a review of "popular" U.S. Department of Agriculture (USDA) **nutrition bulletins**, describing them as "lacking persuasion, dull, colorless, and, in some cases, atrocious."
(Nutrition Today Feb. 1994); and

Get ideas from magazines, parents, friends, **nutrition bulletins**, Beef Ambassador Fact Sheets and meat publications.
(2004 Louisiana 4-H Beef Poster Contest Rules and Regulations).

As noted above (in footnote 1), applicant has submitted claims of ownership of six prior registrations, all of them registered on the Supplemental Register. Our review of the Office's records[4] shows that these registrations are as follows:

- Registration No. 2914031, of the mark WEIGHT-LOSS BULLETIN (BULLETIN disclaimed) for "magazine feature and section in the fields of health, fitness, diet, exercise and lifestyle," in Class 16;

- Registration No. 2920260, of the mark SEX BULLETIN (BULLETIN disclaimed) for "magazine section featuring information in the fields of health, fitness, diet, exercise and lifestyle," in Class 16;

- Registration No. 2937172, of the mark MUSCLE BULLETIN (BULLETIN disclaimed) for "magazine columns and sections in the field of health, fitness, diet, exercise and lifestyle," in Class 16;

---

[4] Applicant has not submitted copies of these registrations (nor even printouts from the Office's automated database), but has merely summarized them in its main brief. However, the Trademark Examining Attorney has not objected to applicant's reliance on the prior registrations, and in her brief she has presented substantive arguments regarding the prior registrations. Although an appropriate practice would have been for applicant to submit copies or printouts of the registrations to enable our review thereof, we nonetheless shall consider the registrations for whatever probative value they might have in this case.

- Registration No. 2956178, of the mark WEIGHT LOSS BULLETIN (BULLETIN disclaimed) for "providing information in the fields of physical fitness, exercise and maintaining a healthy lifestyle; providing electronic newsletters in the field of health, fitness, diet, exercise and lifestyle," in Class 41;

- Registration No. 2974874, of the mark MUSCLE BULLETIN (BULLETIN disclaimed) for "providing information in the field of fitness, exercise and lifestyle," in Class 41; and

- Registration No. 2984357, of the mark NUTRITION BULLETIN (BULLETIN disclaimed) for "magazine column and sections in the fields of health, fitness, diet, exercise and lifestyle," in Class 16.

Applicant relies on these registrations, and in particular on Registration No. 2984357 (NUTRITION BULLETIN for class 16 goods), as evidence in support of its claim that NUTRITION BULLETIN likewise is registrable on the Supplemental Register for the recited services in the present application. The Trademark Examining Attorney contends, in response, that the marks and the goods or services depicted in the prior registrations are distinguishable from the mark and services of the present application and that, in any event, the decisions of

8

previous Trademark Examining Attorneys are not binding on the Board, and the present application must be decided on its own merits.

Our analysis begins with a determination of the genus of the services at issue. *See H. Marvin Ginn, supra.* We find in this case that the genus of services is commensurate with applicant's recitation of services in the application, i.e., "providing information in the field of health and diet via a web site on the Internet."

We next must determine whether the purchasing public understands NUTRITION BULLETIN to refer to the genus of services at issue. *See H. Marvin Ginn, supra.* We note, first, that the dictionary definition of "nutrition" quoted above includes "the science or study that deals with food and nourishment, especially in human beings." We find that this definition of "nutrition" directly applies to and is a name for "the field of health and diet" to which applicant's recitation of services refers, and that NUTRITION therefore is the generic name of the subject matter of applicant's information services.

We further note that the dictionary definition of "bulletin" quoted above includes "a brief update or summary of current news, as on television or radio or in a newspaper." We find that this definition of "bulletin"

9

directly applies to and names the "providing information" aspect of applicant's recited services.  Although the dictionary definition does not specifically mention the Internet as a medium through which "bulletins" may be disseminated, we see no reason to exclude it as such a medium; indeed, the evidence of record, discussed *infra*, shows that the Internet in fact is such a medium through which bulletins are disseminated.  We therefore find that BULLETIN is a generic name for the form taken by applicant's "providing information" services and the manner in which the services are rendered.

In addition to finding that each of the words NUTRITION and BULLETIN are generic as applied to the genus of services at issue, we also find, as we must under *American Fertility, supra*, that the phrase NUTRITION BULLETIN as a whole is generic for the services.  The two NEXIS excerpts and the seven Internet page excerpts quoted above show that informational reports on the subject of nutrition are referred to generically as "nutrition bulletins."  Several of the excerpts specifically show that such nutrition bulletins are disseminated or made available via the Internet.  We find that the quoted excerpts suffice to establish that NUTRITION BULLETIN, as a whole, is and would be understood by purchasers to refer to the genus of

services at issue here, i.e., the service of "providing information in the field of health and diet via a web site on the Internet."

Although we admit that we are somewhat troubled by the fact that applicant already has obtained various Supplemental Register registrations of BULLETIN marks, including NUTRITION BULLETIN (BULLETIN disclaimed) for "magazine column and sections in the fields of health, fitness, diet, exercise and lifestyle" in Class 16, we nonetheless find, based on the clear evidence of genericness which is present in this case, that NUTRITION BULLETIN is generic for the services recited in applicant's application. Although consistency in examination is a goal of the Office, the decisions of previous Trademark Examining Attorneys are not binding on us, and we must decide each case based on the evidence presented in the record before us. *In re Nett Designs Inc.*, 236 F.3d 1339, 57 USPQ2d 1564 (Fed. Cir. 2001).

In this case, the evidence of record establishes the genericness of NUTRITION BULLETIN as applied to applicant's services. We therefore find that NUTRITION BULLETIN is incapable of distinguishing applicant's services, and that

11

it therefore is not registrable on the Supplemental

Register.[5]


   Decision:  The refusal to register on the Supplemental

Register is affirmed.

---

[5] Applicant's proffered disclaimer of BULLETIN would not alter
our decision or the result herein.