THIS DISPOSITION IS
CITABLE AS PRECEDENT
OF THE TTAB

Hearing:                                    Paper No. 18
September 18, 2002                           GFR

**UNITED STATES PATENT AND TRADEMARK OFFICE**
_____

**Trademark Trial and Appeal Board**
_____

In re American Institute of Certified Public Accountants
_____

Serial No. 75/626,097
_____

William M. Ried and Michael K. Cantwell of Willkie, Farr and Gallagher for American Institute of Certified Public Accountants.

Jennifer M. Martin, Trademark Examining Attorney, Law Office 116 (Meryl Hershkowitz, Managing Attorney).
_____

Before Quinn, Chapman and Rogers, Administrative Trademark Judges.

Opinion by Rogers, Administrative Trademark Judge:

Applicant has applied to register, on the Principal Register, UNIFORM CPA EXAMINATION [the mark] in International Class 16 for goods identified as "printed matter, namely, practice accounting examinations; accounting exams; accounting exam information booklets; and prior accounting examination questions and answers." The application includes a claim of first use of the mark, and

first use of the mark in commerce, as of May 1948. Also, during prosecution, the application was amended to include a claim that the mark has acquired distinctiveness; and registration is, therefore, sought under Section 2(f) of the Lanham Act, 15 U.S.C. §1052(f).

In the examining attorney's initial Office action, registration of the mark was refused on the theory that it is a descriptive designation for applicant's goods and, further, "appears to be generic as applied to the goods." Applicant argued that the mark is not generic, and amended to seek registration under Section 2(f). The examining attorney withdrew the refusal to register the entire mark, but asserted that CPA EXAMINATION is generic for applicant's goods and would have to be disclaimed, pursuant to Section 6 of the Trademark Act, 15 U.S.C. § 1056. When this requirement was made final, applicant filed a notice of appeal to the Board and requested reconsideration, which led to Board suspension of the appeal. After the request for reconsideration was denied by the examining attorney, the appeal was resumed. The appeal is fully briefed and applicant's counsel and the examining attorney presented oral arguments. We affirm the requirement that applicant disclaim the exclusive right to use CPA EXAMINATION, apart from the mark as a whole.

2

The record that has been created is sizable and the arguments that have been presented in the briefs and at the oral hearing are lengthy.  We consider first, the record, including what it reveals about applicant and its use of UNIFORM CPA EXAMINATION.

*Applicant's Goods and Mark*

To support its amendment to proceed under Section 2(f), applicant submitted the declaration of Richard I. Miller, applicant's secretary and general counsel.  In this declaration, Miller asserts that applicant has made "substantially exclusive and continuous use" of UNIFORM CPA EXAMINATION "in interstate commerce for at least five years immediately preceding the date of filing of" the declaration.

In addition, to support its request for reconsideration of the disclaimer requirement, applicant submitted the declaration of Craig N. Mills, its executive director of examinations.  Mills states that applicant's exams are "used by the Boards of Accountancy of all fifty states, the District of Columbia, Guam, Puerto Rico and the U.S. Virgin Islands… to assess the qualifications of individuals seeking certification as CPAs."  He explains that the Boards of Accountancy, established by states and

legislatures, "have been given exclusive authority over the certification of CPAs" and that one may not become a CPA without satisfying the requirements of a state or territorial board.

In regard to the relationship of applicant and the state and territorial boards, Mills asserts, "upon information and belief," that, "since 1917, the AICPA has prepared and graded the examination used by the State Boards as the primary means of measuring the technical competence of candidates to become CPAs"; that "since at least as early as 1946, the AICPA has distributed this examination to the State Boards under the trademark UNIFORM CPA EXAMINATION"; and that "since 1952, the UNIFORM CPA EXAMINATION has been the only examination an individual could take to obtain certification as a CPA in the United States of America."

Additional information regarding applicant can be gleaned from findings of fact in the reported decision of American Institute of Certified Public Accountants v. American Institute of Certified Public Accountants, Inc., et al, 183 F.Supp. 926, 125 USPQ 487 (D.C.P.R. 1960). In this case, plaintiff [applicant] obtained an injunction against defendant's use of plaintiff's name and variations thereof. The decision, issued eight years after applicant

reportedly became the sole source of examinations individuals in the various states could take to become CPAs, describes some of applicant's history. The District Court found that "plaintiff [applicant] prepares a two and one-half day examination in accounting, auditing and commercial law, and offers it to the states and territories as a basis for their certified public accountant examination" and that such had been done "for many years"; and that, to become a member of applicant's organization "one must be a certified public accountant and must also have passed an examination satisfactory to [applicant]. If the examination which the prospective member took as a basis for obtaining his certificate as a certified public accountant from a governmental authority is considered by [applicant] to be inadequate, or … took no such examination, [applicant] gives the applicant [for membership] a special examination." Also, the District Court found that applicant had produced "a publication entitled 'Uniform CPA Examination Questions--1954-56,'" in April 1957 and applicant's name appeared thereon as the publisher.

The record before us also includes copies of some of applicant's web pages that discuss its examination. In these, applicant frequently refers to "the Examination"

[utilizing an upper case "E"] when referring to the test it prepares, but also refers to "the examination site" [utilizing a lower case "e"]. Applicant also posts the following confidentiality statement, which uses "examination(s)" [again, utilizing a lower case "e"] except in the references to "Uniform CPA Examination" and in the listing of a link to a web page for "Examinations Team Publications":

### Nondisclosed Uniform CPA Examination and Candidate

### Confidentiality Statement

The Uniform CPA Examination is nondisclosed, which means that the questions remain secure after the examination has been administered. However, the AICPA publishes questions that have been used on the examination, but will not be used on future examinations, in several publications (see Examinations Team Publications).[1]

Candidates and others must not disclose the questions after the examination has been administered. Candidates are required to read the following statement of confidentiality on each Uniform CPA Examination Booklet and to sign and date the front of the Booklet, signifying that they agree to comply with the policy, before they are allowed to open the Booklet.

> I hereby attest that I will not divulge the nature or content of any question or answer to any individual or entity, and I will report to the board of accountancy any solicitations and disclosures of which I become aware. I will not remove, or attempt to remove, any Uniform CPA Examination materials, notes, or other unauthorized materials from the examination room.

---

[1] This underscoring on applicant's web page is assumed to indicate a link to another web page.

6

> I understand that failure to comply with this attestation may result in invalidation of my grades, disqualification from future examinations, and possible civil and criminal penalties.

*Excerpted Stories from the NEXIS Database in the Record*

There are of record many reprints of excerpts taken from the NEXIS database of newspaper, periodical and wire service reports, submitted by both applicant and the examining attorney. The initial NEXIS submissions from both the examining attorney and applicant were retrieved via searches for the phrase "Uniform CPA Examination," because, at that point in prosecution, the question was registrability of the entire phrase, not whether CPA EXAMINATION should be disclaimed. Nonetheless, the excerpts are helpful in resolving the disclaimer question.

Many of the excerpts submitted by the examining attorney with her initial Office action show "CPA" and "Certified Public Accountant(s)" used interchangeably in phrases referring to applicant's exam. Other excerpts show use of "exam" or "examination" [with a lower case "e"] in the manner of a generic term, even when some of these excerpts may be read as referring to applicant's exam. Some excerpts refer to the "uniform" exam as that of a particular state, rather than as an exam of applicant's

7

creation.  And still other excerpts show use of "CPA,"

"CPAs" and "certified public accountant" generically, such

as the following:

… Laura McNutt of Telford has passed the Pennsylvania
Uniform Certified Public Accountant Examination. … -- *The
Morning Call (Allentown)*, July 19, 1999.

* Accounting Award – Lisa Sellers … received the Iowa
Society of Certified Public Accountants Silver Award for
earning the second highest score in the state on the
Uniform Certified Public Accountants Examination.  -- *The
Des Moines Register*, June 30, 1999.

The Tennessee Society of CPAs presented the John S. Glenn
Award, the most prestigious award of the Educational &
Memorial Foundation of the TSCPA, to …. -- *The Tennessean*,
June 27, 1999.

… Fish has served as a NASBA [National Association of State
Boards of Accountancy] regional director since 1998.  The
Great Lakes Region includes member accountancy boards in
Illinois, Indiana, Michigan, Ohio, Pennsylvania and
Wisconsin.  NASBA serves as a forum for the nation's state
boards of accountancy, which administer the Uniform CPA
examination, license certified public accountants and
regulate the practice of public accountancy in the United
States.  -- *The Pantagraph (Bloomington, Il.)*, June 13,
1999.

The AICPA is the national professional organization of CPAs
with more than 320,000 members committed to the highest
standards of quality, independence and ethics in their
practice.  It sets auditing standards, upholds the
profession's code of conduct, provides continuing
professional education, administers peer review programs
and upgrades the Uniform CPA Examination.  -- *The
Pantagraph (Bloomington, Il.)*, May 2, 1999.

Joelle T. Taylor has completed the state Uniform CPA
examination.  -- *Sunday Star-News (Wilmington, NC)*, March
21, 1999.

HEADLINE:  Residents pass La. CPA exam
BODY:  NEW ORLEANS – One hundred and twenty-three candidates have passed the examination required for certification as public accountants, according to the State Board of Certified Public Accountants of Louisiana.
   The candidates passed the Uniform Certified Public Accountants Examination, which was given in November.
   Candidates who pass [sic] the exam will be issued a Louisiana Certified Public Accountant certificate.
CORRECTION-DATE: March 11, 1999
CORRECTION:  A story in Wednesday's Advocate that listed candidates who passed the certified public accountants' examination omitted that Mark Stephen Worthen of Baton Rouge passed the exam with the highest score.  -- *The Advocate (Baton Rouge, LA.)*, March 10, 1999.

13 Area Residents Pass CPA Exams, Join Group
Thirteen Chattanooga-area residents have successfully completed the November 1998 Uniform Certified Public Accountant examination, according to the Tennessee State Board of Accountancy.  -- *Chattanooga Times / Chattanooga Free Press*, March 10, 1999.

The CPA designation is awarded by state accountancy boards….  -- *The Virginian-Pilot (Norfolk, VA)*, January 23, 1999.

Elaine Parker King of Durham, a graduate of Meredith College, has passed the uniform certified public accountant examination for North Carolina.  She was one of 336 successful candidates who passed all four parts of the exam.
   Successful exam candidates must also complete work experience requirements before being awarded the Certified Public Accountant certificate and CPA title by the state Board of CPA Examiners.  -- *The Herald-Sun (Durham, N.C.)*, October 27, 1998.

* CPA Exam – David Freeman has completed the Uniform Certified Public Accountant Examination and now is employed by Arthur Andersen in Minneapolis.  -- *The Des Moines Register*, September 30, 1998.

Michelle Flegel of Fife was among 52 area residents who passed the Washington State Board of Accountancy's Uniform Certified Public Accountant Examination.  -- *The News Tribune (Tacoma, WA)*, September 18, 1998.

9

The State Board for Accountancy at the Virginia Department of Professional and Occupational Regulation has released the names of candidates who have passed the uniform CPA examination. -- *Roanoke Times & World News*, August 30, 1998.

NEXIS excerpts submitted by applicant in response to the first Office action are argued by applicant to show "even the perception of the public at large, [including those not involved in the accounting industry] is that the UNIFORM CPA EXAMINATION mark is not a generic designation, but rather is a trademark of applicant."  In this connection, applicant submitted selected excerpts that all associate the "uniform" exam with applicant.  In fact, some of these excerpts, including some appearing on wire services rather than in newspapers or periodicals[2], appear to be news releases produced by applicant.  Each of the excerpts references applicant by name and almost all utilize the complete phrase "Uniform CPA Examination" [utilizing upper-case letters].  Nonetheless, even among these selected, and presumably most favorable, excerpts, one utilizes "Uniform CPA examination" [lower case "e"] (*DM News*, July 7, 1993); one apparent news release from applicant on the PR Newswire service (April 30, 1996)

_____

[2] NEXIS excerpts from wire services are generally accorded limited probative value, since it cannot be assumed that they

utilizes both "Uniform CPA Examination" and "the November CPA examination"; another apparent news release from applicant on the PR Newswire service (December 5, 1995) utilizes "Uniform CPA examination" [lower case "e"]; and still another AICPA news release, on the Business Wire service (June 27, 1988), utilizes "uniform CPA examination."

The remaining NEXIS evidence consists of excerpts submitted by the examining attorney with the second Office action, i.e., the first action wherein the examining attorney required a disclaimer of CPA EXAMINATION. These excerpts were retrieved via a search for articles with the phrase "CPA examination" but not "uniform":

HEADLINE: 41 Pass State Exam to Become CPAs
BODY: The Nebraska State Board of Public Accountancy said 41 people passed the certified public accountant examination given in May. -- *Omaha World-Herald*, August 21, 2000.

J. Wade Parrish of The NCT Group CPAs, has passed the CPA examination. -- *The Ledger (Lakeland, FL)*, August 20, 2000.

HEADLINE: 47 candidates pass CPA exam
BODY: A total of 47 candidates passed the Certified Public Accountant Examination conducted May 1-2, according to the West Virginia Board of Accountancy. -- *Charleston Daily Mail*, August 14, 2000.

---

have been seen in a newspaper or periodical. <u>In re Patent and Trademark Services Inc.</u>, 49 USPQ2d 1537, 1538 fn 2 (TTAB 1998).

Bartlett, Pringle & Wolf, LLP, announced that Michael Weaver and Shannon Ashby successfully completed the CPA examination. …
The exam is designed to assess the knowledge and skills that entry-level CPAs need when they enter public accounting practice.  -- *Ventura County Star (Ventura County, Ca.)*, August 12, 2000.

The accounting profession and academia have collaborated to enhance accounting education primarily by expanding the educational requirements (typically 150 credit hours) necessary to sit for the CPA examination.  … Historically, this phenomenon has resulted from an overemphasis by both accounting educators and practitioners on the ability of students to immediately pass the CPA examination (a technical assessment) upon graduation.  -- *The Ohio CPA Journal*, July 1, 2000.

Nine graduates passed the CPA examination at Augustana to become Certified Public Accountant [sic].  James King of Villa Park was among those who recently passed the CPA examination in Illinois.  -- *Chicago Daily Herald*, May 14, 2000.

Cindy Anderson passed the CPA examination given by the N.C. State Board of Certified Public Account Examiners.  --  *Sunday Star-News (Wilmington, NC)*, April 2, 2000.

[DeVry] acquired Denver Technical College (1,700 students) and the Chicago-based Conviser Duffy CPA Review, which it folded into its Becker CPA Review subsidiary, the nation's leading course of study for candidates for the certified public accountant (CPA) examination.  -- *Crain's Chicago Business*, December 6, 1999.

Both Becker and Conviser Duffy are multi-location courses that prepare students for the certified public accountant examination.  -- *Chicago Daily Herald*, July 7, 1999.

Marenakos … passed her certified public accountant examination last year.  -- *The Post and Courier (Charleston, SC)*, June 28, 1999.

***Dictionary Listings, Internet Web Pages and "Third-Party"
Registrations in the Record***

Apart from the NEXIS evidence, the record includes a dictionary definition showing that "CPA" and "C.P.A." are abbreviations for "certified public accountant," and a dictionary definition showing that "examination" means, among other things, "a set of questions or exercises testing knowledge or skill." Also, both applicant and the examining attorney have made of record various web pages from entities other than applicant.

The examining attorney has made of record a web page from "Wiley CPA Exam On-Line," with the Internet address "http://brimstone.wiley.com/cpaweb/". This page promotes the Wiley goods and services with the following statement: "Wiley invites you to experience the newest CPA exam preparation resource. … Real-time interactive CPA exam preparation tests covering all of the sections you'll encounter on the AICPA exam." Another Wiley web page the examining attorney has submitted is the "site map" page for the "Wiley CPA Examination Review," which includes a link to the "Wiley Virtual CPA Exam Review" [www.wiley.com/-products/subject/accounting/cpa/sitemap]. Another web page, from "Bisk CPA Review," promotes "CPA Exam

preparation materials" and asserts that "Bisk has helped over 125,000 candidates pass the CPA Exam." [www.cpaexam.- com/Scripts/UserHome/About/About]. Finally, the examining attorney has submitted a reprint from the "CPA Exam Review.Com" web site, which promotes itself as a "one stop-shop for discount CPA Exam Review materials from quality providers" and posts "links to CPA exam resources" and "the latest CPA exam news."

Applicant has made of record reprints of other web pages from nine websites which applicant says show "that the term CPA EXAMINATION is used only in connection with Applicant's goods, the UNIFORM CPA EXAMINATION test" (underscoring by applicant). The search results page from applicant's search shows the following as the "search for" statement: "'cpa examination'-uniform+aicpa." Understandably, the search returned web sites that, for the most part, include references to applicant; some, however, do not. Moreover, these sites all include references to "CPA exam" or "CPA examination" in a manner that would be perceived as generic usage, at least in the absence of references to applicant also appearing on these

14

pages.[3]  We discuss each of these web pages, and quote

pertinent parts, below:

The "Lambers of Arizona" web page, which touts the "Lambers Home Study CPA Review" as "an integrated approach to exam preparation," states: "There is no substitute for knowledge, and we teach our students to think, not just memorize.  This is especially important now that the AICPA no longer releases CPA examination questions."  [underscoring on web page, www.azlambers.com/cpa]

The "Electronic Accountant" web page includes a news item that reads: "[Headline:]  AICPA Names Johnson Director of CPA Exam [Body:]  New York (May 30, 2000) -- The American Institute of CPAs has named Gregory Johnson as its director of the CPA examination.  In his new role, Johnson is responsible for ensuring that the CPA examination is well positioned with state boards of accountancy, state CPA societies and the National Association of State Boards of Accountancy." [www.electronicaccountant.com/news]

"The Financial Management Network" web page in "Today's News & Features" posted the following news item: "[HEADLINE:]  Here it Comes – Ready or Not!!  The Computerized CPA exam is projected for 2003 [BODY:]  The AICPA is feverishly working to complete the goal of converting the CPA exam from the traditional pencil and paper format to a computerized exam.  The target date for a computerized exam is 2003.  If you will be taking the CPA exam after 2003, your study methods should take on a new look. … The new Wiley Virtual CPA Examination Review (www.wileyvirtual.com) is the type of product to use. … Don't let the real CPA exam teach you.  Use the Wiley…"  [www.fmnonline.com/publishing/article]

---

[3] We discuss, *infra*, applicant's argument that because of the references to applicant on these web pages, and in other items in the record, references to "CPA exam" or "CPA examination" would be perceived solely as references to applicant's UNIFORM CPA EXAMINATION and not as generic terms.

The West Virginia Board of Accountancy web page is titled "CPA Examination Information" and states: "Applicants must meet all eligibility requirements at the time of making application to sit for the CPA examination." [www.state.wv.us/wvboa/examinfo]

The Kentucky State Board of Accountancy web page titled "Uniform CPA Exam" states: "Candidates for the CPA examination must be: … The American Institute of Certified Public Accountants (AICPA) prepares the uniform CPA examination used by the Kentucky State Board and accountancy boards of all other states…. The CPA examination is given twice each year…. Initial applications for admission to the CPA examination…." [www.state.ky.us/agencies/boa/Exam]

A web page apparently from the College of Business Administration of The University of Louisiana at Monroe is titled "Certified Public Accountant Examination Application Requirements In Louisiana" and states "The Certified Public Accountant (CPA) Examination is given in May and November of each year." [http://cba.ulm.edu/roshtop/CPA.exam]

The web page from the Accountancy Board of Ohio is titled "CPA Examination Candidate Information" and includes the following: "Note: All of the CPA examination rules have been changed, effective January 1, 2000. For information about obtaining the CPA certificate after you pass the CPA examination, please check…. You may also use our CPA Examination Course Evaluation Checklist…." The web page lists "Future CPA Examination Dates" and "Future CPA Examination Sites." The page goes on to state: "Our agent for CPA examinations administration is CPA Examination Services. … You may request May, 2000 CPA examination materials directly from the CPA Examination Services Web site, or you may download CPA examination materials from that site." The web page goes on to list an address for CPA Examination Services, and includes various links, including "May 2000 CPA Examination Pass List," "Information concerning CPA examination grade release," and "CPA examination candidate brochure (AICPA)." [www.state.oh.us/acc/cpaexam]

16

A web page whose source is unclear features an item titled "A Computer-Based Version Of The CPA Exam Being Developed" written "By Craig Browning."  This states: "The Uniform CPA Examination may be a fully operational computer-based examination as early as 2003.  James Blum, examinations director for the American Institute of Certified Public Accountants (AICPA), presented an overview of the process involved in this change to the CPA exam at a recent luncheon at CLEAR's annual conference in Denver, Colorado." Later, the article refers to both "implementation of a computer-based CPA exam" and a "timeline for administering a computer-based Uniform CPA Examination."  [www.clearhq.org/cpaexam1]

The last of these web pages selected by applicant appears to be from a personnel placement firm known as "KTC" which operates in the tax field.  The web page describes the background of the firm's president and states that he "received his bachelor's degree in accounting from Baruch College (CUNY) in 1981 and passed the CPA examination shortly afterwards."  The article also reports that the firm's president is active in the AICPA.  [www.taxcareers.com/president]

The examining attorney has submitted printouts from the Office's computerized database of registrations showing that there are two registrations for WILEY CPA EXAMINATION REVIEW, each with a disclaimer of CPA EXAMINATION REVIEW; that there are two registrations for CPA TRAK, one of which includes a design element, and both of which include disclaimers of "CPA"; and that there is a registration for a composite word and design mark featuring the words "MCINTOSH COLLEGE" and "CPA TRAK," and which includes disclaimers of "COLLEGE" and "CPA."  The examining attorney also notes that in four of these five registrations, "CPA

17

exam" or "CPA examination" is part of the wording of the identifications of goods or services. In addition, the examining attorney has submitted printouts of eight other registrations, for marks that do not include the terms CPA or EXAMINATION, but which do refer to "CPA exam" or "CPA examination" in their identifications. All of the aforementioned 13 registrations are for marks used for goods or services in the nature of educational services or course books and publications for preparing candidates for CPA testing.

The examining attorney has submitted reprints of information regarding registrations that include disclaimers of the word "exam" or "examination," but we do not find these particularly useful in deciding the question whether applicant should be required to disclaim "CPA EXAMINATION." Applicant has submitted information regarding registrations for marks for other standardized tests or examinations as well as reprints of web pages concerning these tests or examinations and entities that provide courses or materials for preparing for these examinations. We also do not find these materials particularly useful. *See* In re Nett Designs Inc., 236 F.3d 1399, 57 USPQ2d 1564, 1566 (Fed. Cir. 2001) ("Needless to say, this court encourages the PTO to achieve a uniform

18

standard for assessing registrability of marks.
Nonetheless, the Board… must assess each mark on the record
of public perception submitted with the application.")

*Summary of Arguments*

Acknowledging the *Marvin Ginn*[4] test for genericness,
the examining attorney argues that the class of goods or
services at issue in this case is examinations used to
determine one's qualification to become a CPA.  Though she
did not explicitly state as much in her brief, the
examining attorney stated at the oral hearing that she
considered the relevant class of consumers to be CPA
candidates.

The examining attorney argues that the record
establishes that "CPA" and "examination" both are generic
terms when used in connection with applicant's goods.  She
also argues that the composite "CPA EXAMINATION" portion of
applicant's mark UNIFORM CPA EXAMINATION is just as generic
as each of the two terms are individually:

> CPA is an abbreviation for "Certified Public
> Accountant."  Examination is defined as "a set of
> questions or exercises testing knowledge or
> skill."  A CPA examination is a set of questions
> or exercises testing one's knowledge or skill to
> become a certified public account[ant].  The

---

[4] H. Marvin Ginn Corp. v. International Ass'n of Fire Chiefs,
Inc., 782 F.2d 987, 228 USPQ 528 (Fed. Cir. 1986).

19

> combination of the two generic terms CPA and
> EXAMINATION does not create a separate, non-
> generic compound word with any meaning other than
> that of its constituent words. … There is no
> other meaning for the term CPA EXAMINATION other
> then [sic] a set of questions or exercises
> testing knowledge or skill to become a CPA.
> [Brief, p.4; footnotes omitted]

At the oral hearing, the examining attorney requested that we take judicial notice of dictionary definitions of "compound word" and "phrase." This request was made in conjunction with the examining attorney's argument, based on In re Gould Paper Corp., 835 F.2d 1017, 5 USPQ2d 1110 (Fed. Cir. 1987), that we should find CPA EXAMINATION to be a compound word, in the same manner that SCREENWIPE was found to be a compound word in *Gould*, and not a phrase. *Compare*, in regard to treatment of phrases, In re American Fertility Society, 188 F.3d 1341, 51 USPQ2d 1832 (Fed. Cir. 1999). It is the examining attorney's position that one can find a compound word when two words are used together, even if they have a space between them.

Apart from her reliance on dictionary definitions and evidence that shows "CPA" and "examination" to be, individually, generic, and her argument that coupling the terms only creates a generic compound word, the examining attorney also argues that the relevant public understands "CPA EXAMINATION" itself to primarily refer to the class of

20

goods comprising the test for determining one's ability to become a CPA.

Finally, the examining attorney argues that applicant cannot avoid a finding of genericness merely because it has become the only supplier of a test used by all the states as one aspect of determining an individual's fitness to become a CPA. No matter the length of use, she argues, applicant cannot acquire exclusive rights to use the generic term "CPA EXAMINATION" apart from the mark UNIFORM CPA EXAMINATION.

Applicant argues that the examining attorney has too narrowly defined the genus of goods at issue, so that it is "a genus containing but a single species." Applicant urges that we consider the genus to be "professional examinations used to determine an applicant's qualifications to enter a profession." Applicant agrees with the examining attorney that CPA candidates are among the relevant public, but asserts that we should also consider the various state boards of accountancy to be within the relevant public.

Alluding to its status as the sole provider of the test used by the various states and territories to determine the technical competence of CPA candidates, applicant argues that the "uncontroverted evidence" of such use "explains why the relevant public recognizes the 'CPA

EXAMINATION' portion of Applicant's mark, no less than the entire trademark, UNIFORM CPA EXAMINATION, to refer to applicant's goods and not to some hypothetical general class of goods." [Brief, p. 13] In fact, applicant argues that because it is the sole preparer of the licensing test for certified public accountants, "all evidence of record necessarily points to Applicant as the source of the 'CPA EXAMINATION' even when Applicant is not specifically identified." [Brief, p. 15] Further, applicant argues that "the use of the definite article 'the' in connection with 'CPA Examination' in *every* news article introduced into evidence … is implicit acknowledgment of each author's understanding that there is *only one* test given to measure the competence of individuals seeking the certified professional accountant designation." [Brief, p. 16; emphasis by applicant] Thus, applicant concludes, not only do CPA candidates and state accountancy boards understand that the test comes from a single source, but such understanding clearly extends beyond this relevant public to others. The knowledge that the CPA test emanates from a single source, even if that source is unknown, establishes that CPA EXAMINATION functions as a trademark, applicant argues. [Brief, p. 16]

Citing In re Ferrero S.p.A., 24 USPQ2d 1155 (TTAB 1992), applicant argues that, given its long use of its mark, if there were others using "CPA examination" in a generic manner, then surely the examining attorney ought to have been able to find evidence of such use. In addition, the fact that applicant produces a unique product cannot be used as a basis for finding that its name for that product is generic, applicant argues, citing Section 14(3) of the Lanham Act, 15 U.S.C. §1065(3) and R. Guastavino Co. v. Comerma, 180 F. 920 (C.C.S.D.N.Y. 1910).

Applicant also argues that it is inappropriate for the examining attorney to require entry of a disclaimer of a portion of a mark for which registration is sought under Section 2(f) of the Lanham Act. Challenging the examining attorney's view of what makes a "compound word," applicant argues that the space between "CPA" and "EXAMINATION" is significant; that "CPA EXAMINATION" is not a compound word; and that, therefore, the instant case is not governed by *Gould*, *supra*, but rather, by *American Fertility, supra*.

Finally, alluding to certain items in the record, applicant argues that the examining attorney's disclaimer requirement cannot be based on the use of "CPA exam" or "CPA examination" by entities that produce CPA test preparation materials or courses, for two reasons. First,

those entities assertedly know there is only one examination to determine the technical competence of any person wishing to become a CPA.  Second, if such use could establish that "CPA examination" is generic, then numerous registrations of marks for other standardized tests also would be vulnerable to cancellation as generic, because there is material of record that shows test prep courses and companies utilizing the registered marks for these other standardized tests in the marketing of such prep courses and materials.[5]

### *Decision*

Applicant's entire mark, UNIFORM CPA EXAMINATION, initially was refused as descriptive and possibly generic. When applicant amended the application to seek registration under Section 2(f), it implicitly admitted that the composite lacks inherent distinctiveness.  *See* In re Cabot Corp., 15 USPQ2d 1224 (TTAB 1990).  However, by making the amendment, applicant is not viewed as having admitted that the composite is generic.

The examining attorney, apparently retreating from her initial conclusion that the composite might be generic,

---

[5] Examples applicant cites to are Kaplan Inc. or The Princeton Review prep courses for tests such as the GRADUATE RECORD EXAMINATIONS® (GRE) and LSAT® (Law School Admission Test).

24

accepted the amendment to seek registration under Section 2(f) and withdrew the Section 2(e)(1) mere descriptiveness refusal.  Nonetheless, the examining attorney determined that "CPA EXAMINATION" is generic when used in connection with applicant's goods.  Thus, the examining attorney required a disclaimer of "CPA EXAMINATION."  *See* Lanham Act Section 6(a), 15 U.S.C. § 1056(a).  Applicant has argued that, because it seeks registration under Section 2(f), it cannot be required to disclaim any portion of its mark.  The argument has merit only in cases where a disclaimer requirement is based on the asserted descriptiveness of a term.  Section 2(f) does not aid applicant when the examining attorney's assertion is that the term to be disclaimed is generic.  *Cf.* In re K-T Zoe Furniture Inc., 16 F.3d 390, 29 USPQ2d 1787 (Fed. Cir. 1994), wherein the applicant argued that, once the Office accepted an amendment to proceed under Section 2(f), the showing of secondary meaning covered all the words in applicant's mark, as well as the stylized display thereof.  The Board disagreed and affirmed the examining attorney's requirement for a disclaimer; and the Court affirmed.  *Id.  See also*, In re Creative Goldsmiths of Washington, Inc., 229 USPQ 766, 767-68 (TTAB 1986), which includes a lengthy discussion of this issue.

The determination whether a term is generic "involves a two-step inquiry:  First, what is the genus of goods or services at issue?  Second, is the term sought to be registered … understood by the relevant public primarily to refer to that genus of goods or services?"  *Marvin Ginn*, *supra*, 228 USPQ at 530.  Evidence of the public's understanding of a term may be obtained from any competent source, including testimony, surveys, dictionaries, trade journals, newspapers and other publications.  *See* In re Merrill Lynch, Pierce, Fenner and Smith Inc., 828 F.2d 1567, 4 USPQ2d 1141, 1143 (Fed. Cir. 1987), and In re Northland Aluminum Products, Inc., 777 F.2d 1556, 227 USPQ 961, 963 (Fed. Cir. 1985).

As Professor McCarthy has observed in regard to the first part of the inquiry, expanding or contracting the definition of the genus can substantially affect the final determination of whether a term is generic.  2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 12:23 (4th ed. 2001).  The observation seems not to have gone unnoticed by either applicant or the examining attorney, who argue for different definitions of the involved class of goods.  However, the respective suggestions ignore the identification of goods in applicant's application, which specifies applicant's goods

as "practice accounting examinations; accounting exams; accounting exam information booklets; and prior accounting examination questions and answers."

In *Marvin Ginn*, the Court noted that the involved mark was registered for a "magazine directed to the field of firefighting"; noted that the record revealed the existence of other publications directed to that field; and concluded that the "class of magazines at issue is, therefore, those directed to the field of firefighting." *Marvin Ginn*, *supra*, 228 USPQ at 532. In *American Fertility*, the Court stated that it would determine whether the Patent and Trademark Office had carried its burden of proving that SOCIETY FOR REPRODUCTIVE MEDICINE "is generic as applied to the Society's services, namely, promoting the interests of the reproductive medicine profession." *American Fertility*, *supra*, 51 USPQ2d at 1836. It did not determine whether SOCIETY FOR REPRODUCTIVE MEDICINE had been proven generic for societies promoting the interests of other professions. Guided by these decisions, we discern no legal support for the examining attorney's argument that we should define the class of applicant's goods more narrowly than its identification. On the other hand, we likewise do not see any basis for adopting applicant's definition of the class and considering the question whether CPA EXAMINATION is

27

generic for exams, practice exams, etc., in professions other than accounting.

We find the class of goods to be adequately described by applicant's chosen identification and, contrary to applicant's argument, we do not find this to define a genus without any species. Rather, applicant's identification contemplates exams, practice exams, exam information booklets, and collections of prior exam questions and answers of various types and for various aspects of the accounting field. This would include, for example, exams, practice exams, and exam information booklets for college and professional-level accounting and for CPA and non-CPA purposes.

With regard to defining the relevant public whose perception of CPA EXAMINATION is critical to our analysis, we agree with applicant that this includes would-be CPAs and state boards that certify CPAs and administer exams as part of the certification process.[6] However, we also include in the relevant public CPAs themselves, who may use CPA EXAMINATION in listing professional qualifications, and the various entities revealed by the record to be marketing

---

[6] If applicant were seeking to register a certification mark or collective membership mark, then the relevant public might be more broadly defined and include consumers who might rely on a certification mark or membership mark in the selection of a CPA.

or distributing booklets, prep course materials, practice tests, and the like, or involved in the administration and/or grading of examinations of would-be CPAs.

Before considering what the record reveals about whether members of the relevant public perceive CPA EXAMINATION to refer to the involved class of goods, we briefly consider the difference of opinion, as between applicant and the examining attorney, with regard to the applicability of In re Gould Paper Corp., 835 F.2d 1017, 5 USPQ2d 1110 (Fed. Cir. 1987). The examining attorney requested, at oral argument, that we take judicial notice of definitions of "compound word" and "phrase," for the purpose of establishing that two words can be considered a compound even when they are not joined as one and, therefore, the evidentiary standard established in *Gould* for determining the genericness of a compound word can be applied in the instant case. The examining attorney did not provide copies of the definitions from which she read; however, by referencing dictionaries, we have found definitions of the word "compound" that includes examples of words that are considered compound. Although most of the examples are joined or collapsed into one word, there are examples that include a space or a hyphen between the

29

parts.[7]  Applicant, in contrast, asserted at the oral

argument that the presence or absence of a space between

two words makes a difference and that *Gould* does not apply

except in the case of two words actually joined into a

single compound word.[8]

This is not the first case in which parties to an

inter partes proceeding, or an applicant and an examining

attorney in an ex parte proceeding, have argued over how to

harmonize *Gould* and *American Fertility*.  We, however, need

not address these arguments.  The effect of the latter

decision's limitation on *Gould* is to preclude the Patent

and Trademark Office from finding a multi-word phrase to be

generic, when the only available evidence is that the

components are, individually, generic.  In the case at

hand, assessed under *American Fertility*, we have voluminous

evidence of use of "CPA exam" and "CPA examination,"

---

[7] *See*, *e.g.*, "compound 1a: a word consisting of components that
are words (as *rowboat*, *fireman*, *high school*, *devil-may-care*,
*airtight*…) 466 *Webster's Third New International Dictionary*
(1993), and "compound …4. (of a word) a. consisting of two or
more parts that are also bases, as *housetop*, *many-sided*, *playact*,
or *upon*."  420 *The Random House Dictionary of the English
Language* (2nd ed. 1987).

[8] In essence, during his argument, counsel agreed that
CPAEXAMINATION would be generic under *Gould* but argued that CPA
EXAMINATION would not.  When two words have each been shown to be
generic for goods or services, there is at least the chance that,
upon joinder, they would somehow take on additional meaning or an
altered connotation and, perhaps, not be generic as a compound.
We do not see how generic words separated by a space can be non-
generic when the words joined would be generic.

including, too, examples with the CPA initialism spelled

out.  The question we must resolve is the significance of

this evidence.[9]

Applicant argues that the authors of articles

retrieved from the NEXIS database all recognize that there

is but one CPA EXAMINATION because they generally use "the"

as a preface; and, applicant adds, it is irrelevant if, for

authors not focusing on the accounting field, the single

source is anonymous.  Applicant also argues that the state

Boards of Accountancy that utilize applicant's exam and the

entities which offer, among other things, competing

---

[9] During prosecution of the application, and after the amendment to proceed under Section 2(f), applicant offered to disclaim CPA, if the examining attorney would then approve the mark for publication.  During the oral argument, the Board asked applicant's counsel whether it would be more appropriate, if only one word were to be disclaimed, to disclaim "examination," in view of the goods being identified as exams, practice exams, etc. Counsel explained that the original offer to disclaim CPA was made because he believed that there was a judicial decision holding that CPA was generic, but counsel then offered to disclaim "examination" rather than CPA, if the Board would thereby be inclined to approve the mark for publication.
   Frankly, were we to analyze this case under *Gould*, there is sufficient evidence to establish that both "CPA" and "EXAMINATION" are generic when used in conjunction with an examination used to test the knowledge of CPA candidates.  Thus, under *Gould*, we would find "CPA EXAMINATION" generic, and would not find a disclaimer of only "CPA" or only of "EXAMINATION" appropriate.  Such evidence includes, inter alia, dictionary definitions of both "CPA" and "examination," the widespread use of CPA by both state boards of accountancy and by firms that prepare CPA candidates for testing, and applicant's own use of "examination" as a generic term, for its exam, in its candidate confidentiality statement that every individual sitting for the exam must read and sign.

practice exams, all know applicant is the sole source of the exam that is used in all states to test CPA candidates.

We acknowledge that these two constituent groups from the relevant public – state boards and competitors of applicant in the field of offering exam preparation materials and practice examinations – appear to recognize that the UNIFORM CPA EXAMINATION is a product of the AICPA. Nonetheless, that recognition has not stopped many entities within these groups from utilizing "CPA exam" and "CPA examination" on their web pages and in their materials in a manner that would be perceived as generic by individuals from another group in the relevant public – candidates preparing to take the exam offered by one of the state boards, who, perhaps, prepare with materials from one of the purveyors of prep courses and practice examinations.

This duality may have historical roots, at least for the state boards. By applicant's own account of its historical involvement in the accounting field, and reasonable inferences to be drawn therefrom, state boards have been certifying public accountants for more than four score years[10], and applicant offered an examination that

---

[10] This is the length of time applicant has been involved in the field. It is reasonable to assume that there was a period of time predating applicant's involvement in the field when at least some states were certifying public accountants. Thus, we would not be surprised to learn that the governance function of the

they could use for this purpose as early as 1917. Yet applicant did not adopt UNIFORM CPA EXAMINATION as a designation for its test until 1946. When questioned at oral argument, counsel was unable to tell us what applicant called its exam for the nearly 30-year span from 1917 until 1946. Further, it was not until 1952 that all the states were utilizing applicant's exam to test their CPA candidates. The conclusion we draw from applicant's recitation of this history is that at least some individual state boards were examining CPA candidates, i.e., administering CPA examinations for nearly 30 years before applicant adopted its claimed mark. Moreover, even after applicant adopted the UNIFORM CPA EXAMINATION designation, another six years passed during which some states continued to administer their own CPA examinations, not applicant's test.

Notwithstanding applicant's adoption of the designation UNIFORM CPA EXAMINATION, and notwithstanding counsel's argument that the record shows the CPA EXAMINATION portion thereof is just as readily identified

---

states over the certification of public accountants likely has gone on for a century or more. However, the record does not reveal the history of the various state boards, only the history of applicant's involvement. Thus, we do not presume certification by state boards prior to the time applicant began offering its test for their use, i.e., approximately 85 years ago.

33

with applicant as is the entire phrase, the record is clear that state boards of accountancy still refer to the CPA examinations they administer in a generic fashion.  In this regard, we note, in particular, that, among the reprints from web sites that applicant made of record during prosecution are pages from the state boards of West Virginia, Kentucky and Ohio, each of which utilizes "CPA exam" or "CPA examination" in generic fashion.

Other evidence of this type of generic use by members of the relevant public, or which would be likely to be read by members of the relevant public, includes the July 1, 2000 NEXIS excerpt from the Ohio CPA Journal; the web sites from entities that market test prep materials and practice exams, e.g., Wiley, Bisk, Lambers and "CPA Exam Review.com," the "taxcareers.com" web site of the KTC accounting personnel placement firm, and the "Electronic Accountant," "Financial Management Network," and the "clearhq.org" web site.  Some of these web sites not only utilize "CPA exam" or "CPA examination" generically on their pages, but also use a form of "CPA exam" in their web page addresses.  Moreover, while we have not considered purchasers of CPA accounting services to be among the relevant public for our inquiry, that does not mean that the many NEXIS article excerpts from general interest

34

publications, as opposed to specialized journals or business publications, would not be seen by would-be CPAs, who are among the relevant public. CPAs and CPA candidates would be just as likely as other members of the public to see, and have their perception of "CPA EXAMINATION" influenced by, the numerous generic uses of "CPA exam" and "CPA examination"[11] in publications of general circulation. Thus, even if we accept applicant's argument that these particular members of the relevant public would know that there is one source for the UNIFORM CPA EXAMINATION, they would, nonetheless, likely perceive "CPA examination" as a generic term.

In regard to applicant's argument that CPA and CPA-candidate members of the relevant public would likely know that there is one source for the UNIFORM CPA EXAMINATION (even if they do not know it is applicant), the record suggests that this may not be universally true. For example, the web page from the Accountancy Board of Ohio states that its "agent for CPA examinations administration is CPA Examination Services. … You may request May, 2000 CPA examination materials directly from the CPA Examination

---

[11] In this regard, we also include excerpts wherein the initialism is set forth as "cpa" rather than "CPA," and excerpts wherein the individual terms comprising the initialism are spelled out.

Services Web site, or you may download CPA examination materials from that site."[12]  We note, also, two stories from *The Pantagraph* of Bloomington, Illinois appearing in May and June 1999.  The May article states that the AICPA "upgrades the Uniform CPA Examination," while the June article states that "NASBA serves as a forum for the nation's state boards of accountancy, which administer the Uniform CPA examination, license certified public accountants and regulate the practice of public accountancy in the United States."  These stories may lead readers to believe that the AICPA serves only a collateral or advisory role in improving a test created and administered by the state boards and/or NASBA.[13]  Finally, we note various NEXIS excerpts, each of which refers to the examination administered by a particular state as that state's exam. These include references to "the Pennsylvania Uniform Certified Public Accountant Examination," "the state Uniform CPA examination," "the uniform certified public accountant examination for North Carolina," "the Washington State Board of Accountancy's Uniform Certified Public

---

[12] There is nothing in the record to establish that CPA Examination Services is part of, or affiliated with, applicant.

[13] While neither applicant nor the examining attorney submitted information about NASBA for the record, counsel for applicant, at the oral hearing, acknowledged that NASBA might be considered a competitor of applicant.

Accountant Examination," "the CPA examination in Illinois," "the CPA examination given by the N.C. State Board of Certified Public Account Examiners," and the headline "Residents pass La. CPA exam." These articles may suggest the exam given in each state is the same, i.e., uniform, but may not necessarily suggest that there is a single source for the test, rather than a collaborative effort by the states themselves.

All of this evidence persuades us that the relevant public primarily perceives "CPA exam," "CPA examination," and variations in which the initials are set forth in lower case letters or with its component terms spelled out, as generic, even if a sizable subset of that public draws an association between the AICPA and the UNIFORM CPA EXAMINATION. We find that "CPA EXAMINATION" is generic and, therefore, affirm the examining attorney's requirement for a disclaimer. We are not persuaded of a contrary conclusion by applicant's argument that if part of the basis for our finding is the generic use of "CPA examination" by entities that market CPA test prep courses and practice examinations, then we will have rendered vulnerable to cancellation registrations for other marks for standardized tests. In accordance with the *Nett Designs* decision, *supra*, we reject this argument as

37

inapposite to the question before us, specifically, whether applicant must submit a disclaimer of the "CPA EXAMINATION" portion of its mark. As *Nett Designs* makes clear, each case must be considered on its own record. Neither the circumstances under which the Office has registered other marks for other standardized tests, nor the circumstances under which third parties make use of those marks to advertise their test prep courses and materials, is relevant to the question we must decide. *Nett Designs*, *supra*.

While applicant has made other arguments we have not specifically addressed in this decision, we have considered them all. We directly addressed only those that are relevant to the facts and circumstances presented by the record and, therefore, required comment. *See* General Foods Corp. v. Studiengesellschaft Kohle mbH, 972 F.2d 1272, 23 USPQ2d 1839, 1847 (Fed. Cir. 1992).

Decision*:* The requirement under Section 6 of the Trademark Act, 15 U.S.C. § 1056, for a disclaimer of "CPA EXAMINATION" apart from the mark as a whole, is affirmed.

The refusal of registration in the absence of a disclaimer will be set aside and the mark published for opposition if applicant, no later than 30 days from the

38

mailing date hereof, submits an appropriate disclaimer.

*See* Trademark Rule 2.142(g).